463 So.2d 1365 (1984)
FIDELITY & DEPOSIT COMPANY OF MARYLAND
v.
CLOY CONSTRUCTION COMPANY, INC., et al.
COLEMAN OLDSMOBILE, INC.
v.
CLOY CONSTRUCTION COMPANY, INC., et al.
Nos. 83 CA 1428, 83 CA 1429.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
Writ Denied March 8, 1985.
*1366 David S. Bell, Baton Rouge, for plaintiff-appellee Fidelity & Deposit Co. of Md.
Martin C. Schroeder, Jr., Baton Rouge, for defendant-appellant Cloy Const. Co., Inc., et al.
Robert L. Kleinpeter, Baton Rouge, for plaintiff-appellee Coleman Oldsmobile, Inc.
Before COLE, CARTER and LANIER, JJ.
CARTER, Judge.
The sole issue on this appeal is when did compensation take place between the parties.
These consolidated suits [1] resulted from two contracts between Cloy Construction Company, Inc. (Cloy), contractor, Coleman Oldsmobile, Inc. (Coleman), owner, and Fidelity & Deposit Company of Maryland (Fidelity & Deposit), surety for Cloy. The first contract was for the construction of the present Coleman facility, and the second contract was an oral agreement, under which Cloy agreed to perform fill and grading work on the lot adjacent to the construction.
Initially, Fidelity & Deposit filed suit against Cloy[2] to recover funds which it had been required to expend as Cloy's surety. Coleman later instituted a suit against Cloy for damages for defective design and construction of the parking lot of the Coleman facility, and Cloy reconvened to recover the retainage due on the construction contract and other damages.
*1367 After the original trial on the merits, the trial court rendered judgment on December 30, 1981, in pertinent part as follows: (1) in favor of Cloy and Fidelity & Deposit against Coleman for $32,565.00 (retainage on the construction contract) with legal interest from June 12, 1974, and (2) in favor of Coleman against Cloy and Fidelity & Deposit for $14,800.00 plus 25% thereon (cost of repairs for defective design and construction of parking lot), bringing the total of the judgment in favor of Coleman to $18,500.00.[3]
On appeal, this court in Fid. & Dep. Co. of Md. v. Cloy Const. Co., 425 So.2d 887 (La.App. 1st Cir.1983), amended the judgment of the trial court in favor of Cloy and Fidelity & Deposit and against Coleman for $32,565.00 to $32,545.00. The Court of Appeal also determined that the judgment was to bear interest from November 19, 1974. In all other pertinent respects, the judgment of the trial court was affirmed.[4]
Subsequent to that judgment, however, a dispute arose between the litigants as to when the $18,500.00 judgment in favor of Coleman against Cloy would be set-off against the $32,545.00 judgment in favor of Cloy against Coleman. The litigants were unable to resolve the dispute amicably, and on April 28, 1983, Cloy and Coleman filed a joint motion in the district court, which provides as follows:
1.
Judgment was signed herein December 30, 1981. Court of Appeal, First Circuit, State of Louisiana, rendered judgment January 3, 1983, on appeals of movers from said judgment which is final.
2.
Movers disagree over the date compensation or offset occurred in the amount of $18,500.00 and hence over the amount Coleman Oldsmobile, Inc., owes Cloy Construction Company, Inc.
3.
Cloy Construction Company, Inc., asserts the defense of res judicata to the claims of Coleman Oldsmobile, Inc.
WHEREFORE, movers pray that this matter be set for hearing, and for judgment deciding this dispute.
The matter was again submitted to the trial court, and the trial court rendered judgment decreeing that compensation or "offset" occurred November 19, 1974. Cloy perfected this suspensive appeal assigning two specifications of error, namely, the trial court erred in not sustaining Cloy's exception of res judicata and, in holding that compensation occurred November 19, 1974.

RES JUDICATA
Cloy contends that since the trial court judgment of December 30, 1981, which was affirmed by the Court of Appeal on January 4, 1983, awarded Coleman $18,500.00 but was silent as to interest, that silence amounted to a rejection of interest. Cloy reasons that because Coleman's claim for legal interest was denied, the issue of interest in this proceeding is res judicata.[5]
The issue before us is not whether the $18,500.00 judgment draws interest from November 19, 1974, but whether set-off occurred on November 19, 1974, or on December *1368 30, 1981, (the date of the judgment of the trial court). Although it is clear from the trial judge's written reasons for judgment that he intended set-off to occur in the formal judgment, as well as the decision of the First Circuit in Fid. & Dep. Co. of Md. v. Cloy Const. Co., supra, do not clearly provide such.[6]
Therefore, the doctrine of res judicata is clearly inapplicable because the issue of when compensation took effect has not been decided by any of the previous judgments rendered herein.[7]

SET-OFF or COMPENSATION
Cloy contends that its judgment for $32,545.00, which bears interest from November 19, 1974, should not be set-off against the December 30, 1981, judgment for $18,500.00 in favor of Coleman until the date of that judgment. Cloy reasons that set-off could not be effected prior to the date of the trial court judgment which found that Cloy was liable to Coleman for its defective workmanship, and this judgment was rendered on December 30, 1981. Cloy, therefore, concludes that it is entitled to the $32,545.00 plus interest from November 19, 1974, until December 30, 1981, at which point Coleman's judgment for $18,500.00 is set-off against that amount[8] and that the remaining balance owed to Cloy should bear interest from December 30, 1981, until paid. On the other hand, Coleman contends that the $18,500.00 award in favor of Coleman should be applied as a set-off against the $32,545.00 claim of Cloy effective November 19, 1974, leaving a balance due of $14,045.00, which would draw interest from November 19, 1974.
Louisiana statutory law and jurisprudence recognize three kinds of set-off or compensation: legal, which is effected by operation of law[9]; contractual, which is effected by the will of the parties; and, judicial, which is effected by the courts. Tolbird v. Cooper, 243 La. 306, 143 So.2d 80 (La.1962).
Louisiana Civil Code articles 2207, 2208 and 2209 envision legal compensation taking place only when the debts are equally due, liquidated, and demandable. Therefore, legal compensation is not applicable in the case sub judice, since the value of Coleman's claim against Cloy for the defective work was unascertainable until the *1369 trial court's judgment of December 30, 1981. Cloy's claim for retainage under the written contract was determinable and due on November 19, 1974. However, the inquiry does not end with the determination that legal compensation is inapplicable.
Judicial compensation takes place when a court decides two parties are mutually indebted to each other and adjusts the amounts owed in fixing the judgment. In Tolbird, supra, 143 So.2d at p. 84, Planiol is quoted as follows:
"There is judicial compensation when a debtor who is sued for the execution of a debt files a reconventional demand against the plaintiff pleading a credit in opposition to the original demand, which credit does not have or fulfill the conditions required for legal compensation. It may be, for example, that the credit claimed in the reconventional demand is not liquidated; or it may be the result of damages caused by the plaintiff to the defendant  damages that must be evaluated in order to fix the amount of the indemnity due. But the judge, having jurisdiction of the demand, can make such evaluation, and by the same judgment fix the amount of the damages and effect the compensation. The original defendant will simply be ordered to pay the excess over his own debt; it may even happen that he may obtain judgment for the difference, if the indemnity which is due him exceeds what he owes the plaintiff." Planiol, Traité élémentair de droit civil (La.State Law Inst. tr. 1959), n° 562, p. 325.
In the instant case, the court found that debts were owed by the respective parties to each other arising from mutual contractual relationships and effected judicial compensation as between the parties wherein two payments were voided. Therefore, Coleman was entitled to subtract from the retainage the damages due as a result of defective workmanship. The trial court clearly envisioned such a result in the written reasons for judgment.[10] The trial court correctly concluded that although Cloy was entitled to receive the full retainage as of November 19, 1974, when applying judicial compensation, this amount was nevertheless subject to a reduction at that time for defective workmanship. See Henson v. Gonzalez, 326 So.2d 396 (La.App. 1st Cir.1976).
For the above reasons, the judgment of the trial court is affirmed. Appellant is cast for the costs of this appeal.
AFFIRMED.

APPENDIX A

NINETEENTH JUDICIAL DISTRICT COURT PARISH OF EAST BATON ROUGE STATE OF LOUISIANA

Fidelity & Deposit Company of Maryland

Versus

Cloy Construction Company, Inc., et al

No. 209,133

Division "D"

CONSOLIDATED WITH

Coleman Oldsmobile, Inc.

Versus

Cloy Construction Company, Inc., et al

No. 247,928

Division "D"

JUDGMENT
These lawsuits came on for trial pursuant to assignment. The Court having considered the entire record in this matter, the testimony of the witnesses, the evidence introduced and for written reasons for judgment filed December 15, 1981 herein, IT IS ORDERED, ADJUDGED AND DECREED:
There is judgment herein in favor of Paul F. Stewart, Inc., Paul F. Stewart, individually, and CNA Insurance Company dismissing with prejudice the claims of Coleman Oldsmobile, Inc., asserted in No. 247,928 and,
There is judgment herein in favor of Coleman Oldsmobile, Inc., and against Cloy Construction Company, Inc., and Fidelity and Deposit Company of Maryland, in solido, *1370 in the amount of $14,800.00 plus 25% thereon; and
There is judgment herein in favor of Cloy Construction Company, Inc., and Fidelity and Deposit Company of Maryland and against Coleman Oldsmobile, Inc., in the amount of $32,565.00 together with legal interest thereon from June 12, 1974; and
There is judgment herein in favor of Cloy Construction Company, Inc., and against Coleman Oldsmobile, Inc., in the amount of $24,496.50 together with legal interest thereon from date of judicial demand; and
There is judgment herein in favor of Fidelity and Deposit Company of Maryland and against Cloy Construction Company, Inc., decreeing that the judgment herein rendered in favor of Fidelity and Deposit Company of Maryland and against Coleman Oldsmobile, Inc. is superior in rank to and shall prime and be paid in preference and priority to any judgment herein in favor of Cloy Construction Company, Inc., and against Coleman Oldsmobile, Inc., and, there is judgment in favor of Fidelity and Deposit Company of Maryland and against Cloy Construction Company, Inc., Charles C. Cloy General Contractors, Inc., Charles Larry Cloy and W.M. Cloy, in solido, in the sum of $39,982.62 together with legal interest thereon from date of judicial demand, and the right of Fidelity and Deposit Company of Maryland against Cloy Construction Company, Inc., Charles C. Cloy General Contractors, Inc., Charles Larry Cloy and W.M. Cloy, in solido, to its damages for costs and expenses in these lawsuits are reserved to it.
Expert witness fees are fixed as follows: Jerry Householder  $200.00; Raul Gonzales  $200.00; Dean McKee  $200.00; James Clary  $150.00 and David Brenson  $150.00.
All costs herein are taxed equally to Cloy Construction Company, Inc., and Coleman Oldsmobile, Inc.
Judgment, read and signed this 30th day of December, 1981 in Baton Rouge, Louisiana.
 /s/ Melvin A. Shortess
 JUDGE, 19th JUDICIAL
 DISTRICT COURT

APPENDIX B

WRITTEN REASONS FOR JUDGMENT
These consolidated suits involving multiple issues between multiple parties arise out of a contract between Cloy Construction Company, Inc., (Cloy) and Coleman Oldsmobile, Inc. (Coleman), dated July 21, 1972, for the construction of the present Coleman Oldsmobile site at the corner of Goodwood Boulevard and Airline Highway in Baton Rouge, pursuant to plans and specifications prepared by Paul F. Stewart (Stewart), an architect who had been retained by Coleman for that purpose. Plans and specifications (Coleman 3 and 4) were modified orally and in writing on several different occasions as construction progressed. Cloy's performance was bonded by the Fidelity and Deposit Company of Maryland (F & D). Said bond and contract were duly recorded in accordance with the Louisiana Private Works Act.
A certificate of substantial completion was signed by Stewart, Cloy and Coleman on January 23, 1974 (F & D 2). A punch list was attached to this certificate. On June 12, 1974, Coleman and Cloy entered into an agreement (F & D 3) wherein Coleman released $75,000.00 of retainage to Cloy in return for certain considerations. At that time the balance due Cloy under the terms of the contract was $32,565.00 (Joint Exhibit 1). On November 10, 1974, Stewart wrote Cloy with a copy to Coleman, indicating that all work required under the punch list had now been completed. Cloy has never been paid that balance. Cloy also seeks, under a separate oral contract, $24,496.50 against Coleman for certain fill which was spread on the lot owned by Coleman just adjacent to the construction. Finally, Cloy seeks damages.
All materialmen and potential third party claimants were fully satisfied by Cloy and/or F & D, its surety, so no liens were filed. F & D, under the terms of its indemnity agreement with Cloy, seeks certain funds which it was required to expend amounting to $39,982.62 (See Joint Stipulation of Facts between F & D and Cloy filed on the day of trial.)
*1371 Coleman seeks damages against Cloy, F & D and Stewart for alleged defective design and construction. The primary complaint is over the deficiencies in the concrete driveways, parking lots and curbing. Other minor defects include air conditioning and ceiling repairs.
The contract (F & D 1) indicated the contract price was to be $980,989.00. After written and oral adjustments, the total cost escalated to $1,066,466.00. Coleman testified that Milton Womack Construction Company was initially asked to do the job but Womack wanted about $300,000.00 more than Cloy; that he never had a budget for the job; that nickels and dimes never bothered him. The physical facts indicate to the contrary. Coleman runs a very successful business, and nickels and dimes are always important to businessmen. It is obvious that Coleman was trying to get a quality job at the very lowest price. With that thought in mind, addendum No. 4 was entered into between the parties (Stewart 5). Therein, in item 3, wire mesh was deleted in the driving and parking areas, and slab thickness was increased to five inches. Stewart testified that this was a cost-saving measure. The evidence convinced the court that it was one of many cost-saving alternatives adopted during construction.
Several experts testified to the effect this change order may have had on the structural integrity of the finished lot. Jerry Householder, an engineer, testified for Coleman and felt the mesh should not have been deleted because (1) it helps control cracking, (2) it helps keep the slab together after cracking, and (3) it gives added strength. His core samples indicated that the average thickness of the finished slab was 4.6 inches; he testified that one-quarter of an inch is the maximum downside tolerance so the lot was below specifications. He also faulted the curbing. The plans and specifications provided for 5/8-inch steel dowels on 18-inch centers, with the curbs to be cast in place. Darweld C was used to bond the curbing, which is not a true epoxy. Householder's opinion was that the plans and specifications for the curbing were not followed and that Coleman did not get a good substitute. Householder admitted that a five-inch slab would support more load than a four-inch slab with wire mesh, but felt that the wire mesh was important because it helped control cracking and held the slab together after cracking.
Lawrence Farris, a contractor who did work south of the area in question, testified that he patched about twelve areas of the driveway because of cracking and curling. His last work was done approximately three years ago. He felt that improper compaction was the cause of many of the failures. On cross examination he admitted that in deposition he stated he had patched about eight areas.
Dean McKee testified on behalf of the defendants, and said the concrete lots were done in twenty foot squares with redwood dividers of either 1/8 or 3/16 width; that 20 × 20 squares was stretching it but recognized that it was fairly prevalent in the area; that the optimum was 10 × 15 but the economics of the situation governed; that the five-inch thickness did not disturb him nor did the elimination of the mesh; that mesh did not do much good because most contractors do not position it properly during the pour; that the cracks he observed on October 17, 1980, were primarily in the middle of sections; that he also saw some corner cracking which he described as the curl effect; that the cracking and curling were 80% of the cause of any problems in this case; that his tests indicated that the concrete had good strength; that the major reason for cracks would be improper joints and poor compaction; that most of the curbing was satisfactory; that he did not know much about Darweld C and had never used it.
James Clary, a civil engineer, also testified for the defendants and said that 20 × 20 joints were common in commercial parking lots in this area; that a 4.7 average thickness is generally acceptable when specifications call for five inches; that the design was within accepted standards; that he found crackage due to shrinkage and curling, probably caused by settlement; *1372 that he had designed lots without mesh and said it was an acceptable practice; that the lot was comparable to other lots in the area; that if it had been built with four inches and mesh, he would have expected the same results; that he never used Darweld C; that some sections of the curbing had been displaced; that the repaired sections were in worse shape than the rest of the lot. On cross examination, Clary admitted that his report stated that the lot should not have been designed without mesh.
Stewart, the architect, testified that cost was a factor to Coleman and that most items appearing on addendum No. 4 (Stewart 5) were cost-saving items. Stewart also testified that he never agreed to be a full-time superintendent either orally or in writing during the construction. In that regard, he specifically stated in Stewart-3:
This inspection portion of the contract is not to be construed as that of full-time superintendency. Periodic inspections and review will be made as required by Mr. David Brinson of my Baton Rouge office and myself.
This letter was addressed to Coleman. Notwithstanding Coleman's testimony that he expected a full-time architectural superintendent, the testimony was convincing that none was contracted for nor ever intended by the parties.
Cloy testified that he was present at the meeting when addendum No. 4 was discussed, along with Coleman and Stewart, and that he estimated between $4,000.00 and $5,000.00 was saved by the elimination of the mesh.
On the main demand between Coleman and Cloy concerning the concrete parking lot, the preponderance of the evidence indicates that this work had some deficiencies relative to thickness of the slab, and the curbing was constructed in an improper manner, but the parking lot and driveways have withstood the test of time. Three years ago, between eight and twelve sections had been repaired. The total parking area is 188,000 square feet. The area which has been replaced amounts to not more than 4800 square feet. Notwithstanding the opinions advanced by the various experts, the court feels that with the exception of sections repaired by Farris, this parking lot has and continues to serve the purpose for which it was constructed. The one message universally shared by all the experts herein was that concrete cracks. The testimony of McKee and Clary in particular convinced the court that this parking lot was comparable to any parking lot in our area which was eight years old.
Householder was of the opinion that it would cost $1.00 a square foot to replace the parking lot. Using this figure, Coleman should recover $4,800.00 for the twelve twenty-foot sections which were so defective they required replacement. In regard to the curbing, the preponderance of the evidence is clearly in favor of Coleman. The plans and specifications were not followed. An adhesive bonding agent was used and Coleman did not get what he contracted for in this regard. Householder estimated a cost of $10,000.00 to completely re-do this curbing. Some miscellaneous work was done in connection with the air conditioning and ceiling; however, the court was not presented with any testimony relative to the actual cost of these repairs and cannot include these items. Additionally, the court will add 25% for profit and overhead, making a total of $18,500. Judgment to that extent is rendered in favor of Coleman and against F & D and Cloy. Inasmuch as $32,565.00 is being held as retainage by Coleman, F & D is entitled to the difference of $8,065.00.
Regarding the alleged oral contract between Cloy and Coleman for the fill work done on the "Toyota lot" adjacent to the construction, the court was satisfied that this was an oral contract between them, separate and apart from the July 31, 1972 contract (F & D 1). Mitchell Butts, an engineer in Cloy's employ at the time, testified that he heard a conversation between Cloy and Coleman wherein Cloy agreed to fill the adjacent lot to a grade equal to the main lot for $30,000.00, or $1.75 per yard, whichever was less; that he ran a profile and estimate indicating that twelve to fifteen thousand yards would be necessary; *1373 that he told Cloy he was not going to make anything on the job, but Cloy told him he was going to get the dirt cheap or free. Cloy was entitled to $24,496.50 for the fill work done of the adjacent site, and F & D, under the terms of its indemnity agreement, is awarded that sum.
Regarding Stewart, the court feels Coleman has failed to show by a preponderance of the evidence that Stewart's professional conduct breached any standard of care or duty owed by architects to clients in this general area, or that he agreed to provide full-time supervision. Coleman's demand against Stewart is dismissed.
Insofar as F & D's third party claim for indemnification against Cloy is concerned, the court recognizes same, and judgment is rendered in favor of F & D for the amount set forth in the stipulation of facts between these two parties. Cloy's demand for damages against Coleman is denied for the reasons set forth above; namely, the finding that the parking lot was partially defective and the curbing was totally defective.
Costs are taxed equally to Cloy and Coleman. Expert witness fees are fixed as follows: Jerry Householder, $200.00; Raoul Gonzales, $200.00; Dean McKee, $200.00; James Clary, $150.00; and David Brinson, $100.00.
Judgment will be signed in accordance with the above reasons.
BATON ROUGE, LOUISIANA, this 15th day of December, 1981.
 /s/ Melvin A. Shortess
 JUDGE
NOTES
[1] These consolidated cases were previously before the court in Fid. & Dep. Co. of Md. v. Cloy Const. Co., 425 So.2d 887 (La.App. 1st Cir.1983), and only those matters which are essential for this decision will be repeated herein.
[2] The suit filed by Fidelity & Deposit named as defendants Cloy Construction Company, Inc., Charles C. Cloy General Contractors, Inc., Charles Larry Cloy, Willie M. Cloy, and Coleman Oldsmobile, Inc.
[3] The trial court's formal judgment and written reasons for judgment are attached hereto as Appendices A and B, respectively.
[4] See Footnote 1, supra. We note that there is a potential conflict between our holding in Fid. & Dep. Co. of Md. v. Cloy Const. Co., supra, and the holding in Roques v. Alfonso, 399 So.2d 1294 (La.App. 4th Cir.1981). However, that decision is now final.
[5] Louisiana Civil Code article 2286 sets forth the essential element of res judicata and provides as follows:

Art. 2286. Res judicata, essential elements
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
See also, R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980).
[6] See Footnote 3, supra.
[7] Although Cloy cited no jurisprudence to support its position that res judicata was applicable, and we were unable to find any, we note that there are many cases holding res judicata is inapplicable in a suit to annul the legal effects of a prior judgment and such a judgment cannot successfully be urged as res judicata to itself. Powell v. Treat, 265 So.2d 678 (La.App. 2nd Cir.1972) and cases cited therein. See also Zeigler v. Zeigler, 420 So.2d 1342 (La.App. 3rd Cir. 1982).
[8] In a memorandum in support of the motion to determine the date of compensation, Cloy illustrated his theory in the following calculations.

Coleman owes Cloy:
 Principal Interest Total
$32,545.00 $17,677.00 $50,222.00
Cloy owes Coleman:
 Principal Interest Total
$18,500.00 0 $18,500.00
Imputation:
$32,545.00 $17,677.00 $50,222.00
 (823.00) (17,677.00) (18,500.00)
__________ ___________ ___________
$31,722.00 0 $31,722.00

[9] Louisiana Civil Code articles 2207, 2208, and 2209 provide for legal compensation in pertinent part as follows:

Article 2207:
When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed.
Article 2208:
Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums.
Article 2209:
Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.
[10] The trial court erred in computing the balance due after set-off in the written reasons for judgment, but corrected this error in the formal judgment. See Appendices A & B.