**In re MMR HOLDING CORPORATION.**

**AETNA CASUALTY & SURETY COMPANY**

v.

**GUST K. NEWBERG CONSTRUCTION COMPANY, et al.**

**Civil Action No. 96–362–A.**

United States District Court,
M.D. Louisiana.

Aug. 23, 1996.

Douglas S. Draper, Friend, Wilson, Draper, Hubbard & Bowling, New Orleans, Louisiana, for Appellant Gust K. Newberg Construction Company.

Daniel Alan Smith, Deutsch, Kerrigan & Stiles, New Orleans, Louisiana, for Appellee Aetna Casualty and Surety Company.

John M. Landis, Marc David Winsberg, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, Louisiana, for Appellee MMR Holding Corporation.

## RULING ON APPEAL

JOHN V. PARKER, Chief Judge.

This is an appeal from an adversary proceeding in the Bankruptcy Court. Gust K. Newberg Construction Company ("Newberg"), timely appeals a judgment of the Bankruptcy Court, dated February 22, 1996. Aetna Casualty & Surety Company ("Aetna") has filed a response. Newberg has filed a reply brief. There is no need for oral argument. The court has jurisdiction pursuant to Bankruptcy Rule 8001.

Newberg appeals from a judgment awarding Aetna $1,548,671.00, with prejudgment interest from March 28, 1990, at the rate set forth in La.Civ.Code art. 2924. Aetna was awarded that amount in connection with a debt that Newberg owed MMR (the debtor in bankruptcy) which had been assigned to Aetna. Newberg assigns three errors: (1) that Newberg should have been allowed a setoff for a debt that MMR owed Newberg; (2) that the bankruptcy judge abused his discretion in awarding prejudgment interest from the date of the bankruptcy filing; and (3) that the rate of interest should have been determined by California rather than Louisiana law.

### Right of Setoff under State Law

■ The parties have extensively briefed this issue to the point of making it unduly complicated, factually and legally. Basically, Aetna, as assignee of MMR, sought to recover a debt owed by Newberg to MMR in connection with a construction project in Santa Rita, California. Newberg does not contest the amount of its indebtedness to MMR or the validity of the assignment[1].

Newberg contends that it is legally entitled to setoff moneys it advanced to MMR[2] (prior the MMR bankruptcy) in connection with a construction project in Lorton, Virginia, re-ferred to as the Lower Potomac project. Newberg's first argument is that the amount of the advances it made to MMR on the Lower Potomac project should have been setoff against the amount that it owed MMR on the Santa Rita project as a matter of legal compensation.

■ Conclusions of law are reviewed de novo. *Matter of Murexco Petroleum, Inc.,* 15 F.3d 60, 62 (5th Cir.1994). Section 553 of the Bankruptcy Code preserves a state law right of setoff, if any, subject to certain limitations provided in section 553. *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Thus, the salient issue is whether Newberg has a right of setoff under Louisiana law.

Legal compensation is provided for under Louisiana Civil Code article 1893:

"Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due ..."

■ Article 1893 makes it plain that compensation takes place by operation of law the moment that the two debts are mutually owed and the sums are liquidated and presently due. *American Bank v. Saxena,* 553 So.2d 836, 844 (La.1989). Legal compensation is not available unless the two debts are equally liquidated[3] and demandable. *Hartley v. Hartley,* 349 So.2d 1258 (La.1977).

The bankruptcy judge found that the debt owed by Newberg to MMR was liquidated and due prepetition. Newberg does not challenge this finding on appeal[4]. Newberg contends that the bankruptcy judge should have allowed for legal compensation because the amounts of the advances it made to MMR were equally liquidated as of March 27, 1990.

---

1. While there are some statements in Newberg's briefs that might be construed as challenging the validity of the assignment, Newberg has not assigned any error relating to the assignment which was approved by the Bankruptcy Court in May of 1990.

2. Newberg advanced $1,986,558.00 to MMR for payroll and $1,163,792.00 to MMR's subcontractors and supplier, for a total of $3,150,350.00.

3. A claim is liquid when it is capable of ascertainment by mere calculation in accordance with accepted legal standards. *American Bank,* supra.

4. Although it is not entirely clear from some of the arguments made by Newberg, by seeking compensation, Newberg necessarily admits the debt sued on by Aetna. *Tolbird,* infra.

In his oral findings, however, the bankruptcy judge did not question Newberg's contention that the amount of the advances was readily ascertainable. Appellant's brief, Attachment A, p. 14. The bankruptcy judge found that the claim for repayment of the advances was contingent upon the outcome of other associated claims between Newberg and MMR and the owner of the Lower Potomac project. Newberg belatedly recognizes this finding in its reply brief and then only in a cursory manner.

To be entitled to legal compensation, Newberg had to establish that MMR's debt was equally liquidated **and demandable.** Newberg fell short of establishing the second component required for compensation to take place as a matter of law. The court fails to find any error of law or fact in the bankruptcy judge's conclusions.

█ Next, Newberg apparently contends that the bankruptcy judge should have exercised his authority under La.Civ.Code art. 1902 to offset the amount of the advances against the debt that Newberg owed MMR.[5] La.Civil Code art. 1902 provides:

"Although the obligation claimed in compensation is unliquidated, the court can declare compensation as to that part of the obligation that is susceptible of prompt and easy liquidation."

█ A court may use judicial compensation when two parties are mutually indebted to each other by balancing the amounts in fixing the judgment. *Tolbird v. Cooper,* 143 So.2d 80 (La.1962). It is in reality, no more than a practice of shaping final judgments, and is invoked when compensation as a matter of law is not operable. Schewe, Developments in Business Law, 1984–1985, 46 LA. L.Rev. 595 (1986). Judicial compensation

may be used when a previously unliquidated debt has become liquidated or fixed by the court. Id.

Thus, under the Civil Code, judicial compensation may be declared "as to that part of the obligation that is susceptible of prompt and easy liquidation". It is readily apparent from the submissions made by the parties and the findings of the bankruptcy judge that the advances were an integral part of a combined effort between MMR and Newberg to pursue a joint claim against the owner of the Lower Potomac project. In view of that ongoing relationship and the settlement that was reached by MMR and Newberg in May of 1991[6], it is clear that the advances did not constitute a separate debt "susceptible of prompt and easy liquidation". The court finds that Newberg's argument that it should have been allowed judicial compensation for the prepetition advances lacks merit, factually and legally.

█ Newberg additionally contends that it should have been allowed judicial compensation because the liability of MMR on the Lower Potomac project was subsequently fixed at $1,750,000 by virtue of the May 1991 settlement and Newberg's agreement with the project owner in September of 1992. Thus, Newberg contends that the bankruptcy judge should have used judicial compensation to offset the $1,750,000 against the debt that it owed MMR.

While the amount of MMR's indebtedness may well have been readily ascertainable in September of 1992, the court finds that this argument lacks merit in view of La.Civ.Code art. 1900:

"An obligor who has consented to an assignment of the credit by the obligee to a third party may not claim against the

---

5. Newberg cites *Fidelity & Deposit Co. of Maryland v. Cloy Const. Co., Inc.,* 463 So.2d 1365 (La.App. 1st Cir.1984) for the proposition that judicial compensation is effective as of the date of the existence of the claim rather than the date that judicial compensation is declared by the court. Consequently, Newberg contends that judicial compensation would take place prepetition since the advances to MMR were made before then and its debt to MMR was established before then. The court need not resolve the "relation back" issue in view of its findings above.

6. In the settlement, the parties agreed to continue to pursue a joint claim against the project owner. They also agreed to a complex arrangement of allowing certain expenditures from any proceeds recovered on the claims and for sharing any net recovery; and, if insufficient proceeds were recovered, an arrangement for allocating the losses and ultimately limiting Newberg's recovery against MMR.

latter any compensation that otherwise he could have claimed against the former.

An obligor who has been given notice of an assignment to which he did not consent may not claim compensation against the assignee for an obligation of the assignor arising after that notice."

Newberg has failed to establish that it did not have notice of the assignment when its claim for $1,750,000 became determinable in 1992. Indeed, the transcript of the hearing on MMR's motion for approval of the settlement agreement makes it plain that Newberg knew of the assignment prior to the time that the settlement was approved by the Bankruptcy Court in May of 1991. Bankruptcy Record, Vol. 1, G, Ex. 16. Consequently, the court finds that Newberg's claim for offset based upon the settlement is not factually or legally supportable due the intervening notice to Newberg of the assignment to Aetna.

■ In an attempt to get around the inevitable, Newberg argues that its claim under the settlement should be treated as preexisting the bankruptcy petition (and therefore any possible notification of the assignment) because MMR rejected the Lower Potomac contract, citing 11 U.S.C. §§ 365(g)(1) and 502(g). While this argument might be relevant to whether an offset is allowed under the bankruptcy code, Newberg must first demonstrate that it is entitled to an offset under state law.[7]

Under La.Civ.Code art. 1900, an obligor (Newberg) who has been given notice of the assignment of the debt to a third party (Aetna) may not claim compensation against the assignee (Aetna) based upon a subsequent obligation of the assignor (MMR). Consequently, Newberg has no right under state law to an offset by virtue of the settlement agreement.

**Prejudgment Interest**

■ Newberg argues that the bankruptcy judge abused his discretion in awarding prejudgment interest from March 28, 1990, the date of the bankruptcy petition. Newberg apparently claims that Aetna has withheld payment of funds that it should have paid Newberg in the course of "a separate business transaction"[8] and that "one of the factors" Aetna has given for withholding the funds is that Newberg failed to pay the debt at issue here. To resolve that issue, the Bankruptcy Court would have had to engaged in satellite litigation relating to matters totally unconnected to these proceedings. In seeking to offset the claim here, Newberg has necessarily conceded that it owed MMR prepetition. The court finds no abuse of discretion in awarding prejudgment interest from the date of the bankruptcy petition under these circumstances.

■ Finally, Newberg argues that California rather than Louisiana law should control the rate of interest because the claim assigned to Aetna stems from a construction contract made and performed in California.[9] The court finds no abuse of discretion in awarding interest under Louisiana law, particularly as it appears that Newberg did not raise this issue below. Moreover, the substantive issues decided by the bankruptcy judge are controlled by Louisiana law rather than California law. The court finds no logic in the piecemeal approach suggested by Newberg, i.e. it is proper to use Louisiana law to determine the substantive issues and the date that interest commences but not the rate of interest.

Accordingly, the judgment of the Bankruptcy Court dated February 22, 1996, is hereby AFFIRMED.

---

7. As Newberg states in its original brief, "[b]ankruptcy law, however, does not create the right of setoff and bankruptcy courts look to the state law to determine whether, under the law of the state, the right of setoff exists." Brief of Appellant, p. 15.

8. While it is not clear from Newberg's briefs on appeal, its brief filed with the Bankruptcy Court makes it plain that this argument involves an unrelated business transaction. Bankruptcy Record, Exh. L. p. 9.

9. This is inconsistent with Newberg's position that the Santa Rita claim was liquidated by settlement agreement.