480 So.2d 920 (1985)
UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff-Appellant,
v.
SOUTHERN EXCAVATION, INC. and Travelers Indemnity Company, Defendants-Appellees.
No. 17417-CA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1985.
Writs Denied January 31, 1986.
*921 Theus, Grisham, Davis, Leigh & Brown by Edwin K. Theus, Jr., Monroe, for plaintiff-appellant, U.S. Fidelity and Guar. Co.
Levy & Shealy by Robert W. Levy, Ruston, for defendants-appellees, Southern Excavation, Inc. and George Thomas Kilpatrick & Mary Belle Hanson Kilpatrick.
Blanchard, Walker, O'Quin & Roberts by Joseph W. Milner, Shreveport, for defendant-appellee, Travelers Indem. Co.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
This is a suit by a subcontractor's surety to recover the remaining balance due on a construction contract which the surety was required to complete when the subcontractor defaulted on the contract. Plaintiff appeals from the decision of the trial court allowing the defendants to set off the losses sustained by the subcontractor's default on three other unrelated unbonded contracts against plaintiff's claim for the full remaining balance on the defaulted contract. We reverse.
On May 4, 1981, plaintiff-appellant, United States Fidelity & Guaranty Co. (hereinafter referred to as USF&G), filed suit against defendant-appellees, Southern Excavation, Inc. (hereinafter referred to as SEI), and the Travelers Indemnity Company (hereinafter referred to as Travelers), in solido, for $47,754.98, interest and attorney's fees. Plaintiff alleged the sum was due and owing on a subcontract between SEI and American United Products Corporation (hereinafter referred to as American), the performance of which USF&G guaranteed and subsequently completed.
In response to plaintiff's petition, Travelers filed a third party demand for indemnification against George Thomas Kilpatrick and Mary Belle Hanson Kilpatrick, president and secretary-treasurer, respectively, of SEI. Travelers alleged that it was entitled to full indemnification from the Kilpatricks for any liability Travelers might incur as a result of a contractor's bond which it executed in favor of SEI.
*922 This case was submitted to the trial court for decision on a joint stipulation of facts approved by all parties. The essential facts as contained in that stipulation, are as follows:
1.
On February 21, 1977, Southern Excavation, Inc. (hereafter "SEI") entered into a Contract with the Louisiana Department of Transportation and Development for the performance of work under State Project No. 451-01-46, Federal Aid Project No. 1-20-1(96)15, Shreveport Exp. (Ramp Modification), Caddo Parish, Louisiana, which Contract was recorded in Mortgage Book 1148, page 256 of the records of Caddo Parish, Louisiana. The Travelers Indemnity Company (hereafter "Travelers") on that same date issued a Contractor's Bond in the amount of $2,374,882.03 which Bond was attached to the Contract and filed with it in the records of Caddo Parish, Louisiana. A copy of the Contract and Bond is attached as Exhibit "A".
2.
On January 29, 1977, SEI entered into a subcontract with American United Products Corporation (hereafter "American") whereby American agreed to perform certain portions of the aforesaid Contract. Included as a part of that subcontract was a Performance and Payment Bond on which American was the principal and United States Fidelity & Guaranty Company (hereafter "USF&G") was the surety. A copy of that subcontract is attached as Exhibit "B".
3.
American commenced the work under the subcontract and did certain portions of the work required of it and received certain payments. However, American did not complete the work required of it under that subcontract and SEI made demand upon USF&G to complete the work required of American pursuant to the aforesaid subcontract and bond.
4.
USF&G completed the work required of American under the aforesaid subcontract, thus leaving a net balance due by SEI to USF&G on this subcontract of $34,692.88.
5.
On October 17, 1980, the Department of Transportation and Development filed an acceptance of the Contract in Mortgage Book 1341, page 96 of the records of Caddo Parish, Louisiana. A copy of that acceptance is attached as Exhibit "C".. . . . .
7.
On April 29, 1981, USF&G filed this suit in the Third Judicial District Court, Lincoln Parish, Louisiana, to enforce its rights against SEI and Travelers. Travelers later filed a third party petition against George Thomas Kilpatrick and Mary Belle Hanson Kilpatrick, President and Secretary-Treasurer, respectively, of SEI, for recovery of all sums that might be adjudged against Travelers and in favor of USF&G and for all expenses and attorneys' fees incurred by Travelers in connection with this suit, the basis for which third party petition is the General Agreement of Indemnity referred to in Article 11 below.. . . . .
9.
In addition to the above-described subcontract, there were three other subcontracts between American and SEI. None of these other three subcontracts were bonded jobs, i.e., no bond had been issued by USF&G or any other surety. The results of the three unbonded subcontracts are as follows: On Project No. 85-08-13, SEI sustained a loss of $17,555.75 by virtue of having to pay that much more than the subcontract price to get the work done; on Projects No. 10-33-04 and No. 10-30-22, SEI sustained a loss of $794.40 by virtue of having to pay *923 that much more to get the work done than provided for in the subcontract; on Project No. 831-07-26 and No. 23-10-26, SEI sustained a loss of $1,898.25 because of a "possible lien."
10.
The basis of the defense asserted by SEI and Travelers is that they are entitled to set off the losses on the non-bonded jobs against the amount which they owe on the above-described subcontract on which USF&G completed the work. (See Articles 3 and 4 above).....
Thus, it was agreed in the joint stipulation that the balance due by SEI to USF&G on the subcontract was $34,692.88. This sum was computed by deducting the payments previously made to American from the total amount due on the subcontract. Consequently, according to the joint stipulation, USF&G is entitled to judgment against SEI and its surety, Travelers, in either the sum of $14,444.48, if compensation or set-off is legally permissible, or $34,692.88, if it is not.
On the basis of the stipulated facts, the trial court upheld the compensation defense. Thus, plaintiff was awarded the sum of $14,444.48, together with legal interest thereon from judicial demand until paid, together with all costs of the proceedings. The trial judge ruled in favor of Travelers on its third party demand granting full indemnification plus interest, expenses and attorney's fees.
Plaintiff's appeal, asserting four assignments of error, raises the following two issues:
(1) Whether a general contractor  whose subcontractor defaulted on the subcontract causing the subcontractor's surety to complete the performance of the contract  can set off against that surety's claim for the full remaining balance of the contract price, debts owed by the subcontractor to the general contractor on other unrelated, unbonded contracts; and
(2) Whether on a contract claim, legal interest runs from the date of judicial demand, or from the date on which the claim matures.
Travelers answered the plaintiff's appeal to assert its right to a commensurate increase in the amount of its judgment for indemnification against the Kilpatricks should the claim of compensation be disallowed on appeal. Travelers does not seek an increase in the amount of attorney's fees to be awarded on appeal.
Plaintiff's first contention is that defendants are not entitled to set off the losses sustained on the three unrelated, unbonded contracts against the amount owed plaintiff for the subcontract it completed. Setoff, or compensation as it is phrased in the Civil Code, takes place by operation of law when two persons are mutually indebted to each other. LSA-C.C. Art. 1893.[1] However, for compensation to be applicable, two distinct debts, equally liquidated and demandable, must exist contemporaneously. Hartley v. Hartley, 349 So.2d 1258 (La.1977). The effect of compensation is a reciprocal extinguishment of the two debts to the amount of their respective sums, as soon as they exist simultaneously.
The burden of proving compensation rests with the proponent of the plea. Coburn v. Commercial National Bank, 453 So.2d 597 (La.App. 2d Cir.1984), writ denied, 457 So.2d 681 (La.1984). To sustain this burden, the proponent must prove by a preponderance of the evidence that the claim urged as a set-off to plaintiff's claim is equally liquidated and demandable, i.e., that the amount of each is for a certain amount or for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards. Hughes Reality Company, Inc. v. Pfister, 245 So.2d 757 (La.App. 4th Cir.1971); Olinde Hardware and Supply Company, Inc. v. Ramsey, *924 98 So.2d 835 (La.App. 1st. Cir.1957). Debts are equally demandable when both debts are mature and subject to payment on demand. Federal Deposit Insurance Corporation v. Page, 195 So. 629 (La.App. 2d Cir.1940).
Compensation also requires that there be a mutuality of obligors. LSA-C.C. Art. 1893; Cefalu v. N. Cefalu Company, Inc., 253 So.2d 547 (La.App. 1st. Cir.1971); Ben C. Penn & Son v. Thompson Packers, Inc., 169 So.2d 259 (La.App. 4th Cir.1964). This contemplates a close personal debtor-creditor relationship, i.e., that the creditor of one of the obligations be the personal and principal debtor of the other obligation and vice versa. See: 4 Aubry et Rau, Cours de Droit Civil Francais, No. 326 (6th Ed.1946).
Plaintiff's relationship towards defendant is not that of a principal debtor, but rather that of a surety. A surety who has paid the debt of its principal is at once subrogated to all the rights, remedies, and securities of the creditor. LSA-C.C. Arts. 1804 and 1829[2]; Art. 3053; Martel v. Rovira, 164 La. 1099, 115 So. 283 (1927); Brown v. Staples, 138 La. 602, 70 So. 529 (1915). Subrogation is the substitution of one person to the rights of another. Thus, an obligation which is extinguished with regard to the subrogor is continued to the benefit of the subrogee, who is authorized to the extent that he has paid, to avail himself of the rights and actions of the original subrogor. LSA-C.C. Art. 1825;[3]Comeaux v. Roy, 469 So.2d 478 (La.App. 3rd Cir.1985).
Codally stated, suretyship is an accessory promise whereby one binds himself for another already bound, and agrees with the creditor to satisfy the obligation if the debtor does not. LSA-C.C. Art. 3035. Thus, plaintiff's obligation towards defendant is based on the accessory obligation contained in the performance and payment bond executed by it. It is not based on the principal obligation existing between SEI and American. When plaintiff was called to perform under its performance bond it was not acting pursuant to the principal obligation of American to SEI. Rather, it was acting pursuant to its own separate obligation contained in its agreement of suretyship. Thus, the personal debtorcreditor relationship contemplated by the compensation articles is obviously not present.
Since compensation takes place between two debts which are "equally demandable," and since compensation occurs by operation of law, the only arguable manner that compensation could have occurred in the instant case is if the debt on the three unbonded contracts which American owed SEI were equally liquidated and demandable simultaneously with the debt on SEI's obligation to American as general contractor.
From the facts at our disposal, the date SEI suffered the loss on the three unrelated contracts is not available. Nevertheless, it is obvious that SEI's obligation to American on the contract to which plaintiff became subrogated was clearly not liquidated and demandable as American had not completed the work required in the contract.[4] As such, since compensation could not have occurred between American and SEI prior to American's performance, *925 it may not later occur to the prejudice of the rights acquired by USF&G. Compensation cannot take place to the prejudice of rights acquired by a third person. LSA-C.C. Art. 1899.[5]
To recapitulate, we conclude that the direct relationship, which is a prerequisite for compensation to occur, did not exist between SEI and USF&G. The direct link in this cause was prevented by the accessory nature of plaintiff's obligation. Additionally, by completing the project, USF&G became entitled to the remaining balance of the contract price in the hands of SEI, not as a creditor and subject to compensation, but as a subrogee of SEI having the same rights to the fund as SEI. Moreover, American and SEI had no reciprocal liquidated and demandable obligations within the meaning of Louisiana compensation concepts which could be set off against one another.
Plaintiff's second contention is that the trial court erred in awarding plaintiff legal interest from the date of judicial demand, May 4, 1981, arguing that legal interest should accrue instead from the date when the contract was substantially completed.
In a contractual obligation, interest is recoverable from the time the debt becomes due unless otherwise stipulated. LSA-C.C. Art. 2000[6]; Fidelity & Deposit Company of Maryland v. Cloy Construction Company, 425 So.2d 887 (La.App. 1st Cir.1983). As the instant contract contains no contrary provision regarding interest, defendant's contractual debt to plaintiff became due upon substantial completion of the work which occurred, according to the stipulation, on October 17, 1980, when the Louisiana Department of Transportation and Development accepted the work.
In summary, the claim of compensation is disallowed. As a result, the third party plaintiff, Travelers, is entitled to a commensurate increase in the amount of its judgment for indemnification against the third party defendants, George Thomas Kilpatrick and Mary Belle Hanson Kilpatrick. Legal interest is awarded from the date of the contractual completion. The judgment of the trial court is reversed and recast as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, United States Fidelity and Guaranty Company, and against defendants, Southern Excavation, Inc. and The Travelers Indemnity Company, in solido, in the amount of $34,692.88 plus legal interest from October 17, 1980, until paid, and for all costs of these proceedings.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein on the third party demand in favor of third party plaintiff, The Travelers Indemnity Company, and against the third party defendants, George Thomas Kilpatrick and Mary Belle Hanson Kilpatrick, in solido, in the amount of $34,692.88, together with legal interest thereon from October 17, 1980 until paid, and further, the sums of $299.69 as incurred expenses and $5,004.00 as attorney's fees, together with 12% interest on both these sums from May 7, 1982, until paid, and for all costs of these proceedings."
Costs of this appeal are assessed against Southern Excavation, Inc. and Travelers. Travelers is awarded judgment for these costs against third party defendants, George Thomas Kilpatrick and Mary Belle Hanson Kilpatrick.
REVERSED AND REMANDED.
MARVIN, J., concurs and assigns additional reasons.
MARVIN, Judge, concurring:
I concur in the opinion and add these additional reasons for holding that the principal *926 contractor (SEI) cannot claim offset or compensation against USF&G for what was owed SEI by American, the subcontractor, on other unrelated jobs.
USF&G was solidarily obligated with American to perform the subcontract and to pay all labor and material costs covered by the contract. In this instance we are considering only the effect of the obligation to perform which is unconditional. The suretyship articles are couched in terms of payment of the debt of another and not in terms of performance. CC Art. 3045. That article recognizes that the effects of suretyship in some instances are to be regulated by the principles established for debtors in solido.
When USF&G fully performed the remaining work on the subcontract, the principal contractor, SEI, became obligated to pay for that work. The roles then changed and SEI became an obligor for payment where before it was an obligee for performance. SEI, upon completion of the subcontract, as obligor for payment, had two solidary obligees, USF&G for its later performance and American for its earlier performance.
Compensation in the context of solidary obligations is dealt with in CC Art. 1898. See Comment under CC Art. 1897. Article 1898 clearly says that
Compensation between one solidary obligee (American in this instance) and the obligor (SEI in this instance) extinguishes the obligation (of SEI to pay) only for the portion of that obligee (and not for the portion of USF&G). (Our emphasis.)
I agree the judgment should be amended to allow USF&G to recover the unpaid amount of the subcontract ($34,692).
NOTES
[1] Formerly, Articles 2207, 2208 and 2209, respectively, before Act. 331 of 1984, revised the obligations articles of the Civil Code. As the comments to Article 1893 indicate, this article does not change the previous law.
[2] Formerly Article 2161(3) before the 1984 revision. This article reflects no change in the law with respect to the issue involved in this case. The revision merely broadened the subrogation that takes place when a purchaser pays a creditor who holds a real right of security on a thing purchased by allowing it to cover both movables and immovables.
[3] This article is new. As the comment shows, it does not change the law. It simply gives express formulation to a definition of subrogation which is traditional in civil law doctrine.
[4] Moreover, had compensation occurred between American and SEI, USF&G as the surety would have been discharged. LSA-C.C. Art. 1897. This article, which does not change the law, reproduces the substance of former LSA-C.C. Art. 2211, as the comment indicates. Thus, had USF&G performed subsequent to the occurrence of compensation, as contended by the defendant SEI, its performance would apparently amount to the payment of a thing not due, resulting in USF&G's recovery in any case. LSA-C.C. Art. 2301, et seq.
[5] Formerly Article 2215 before the 1984 revision. Comments to Article 1899 indicate that it also does not change the prior law.
[6] As the comment to Article 2000 indicates, this article reproduces the substance of several former articles on the subject and eliminates others as unnecessary. It does not change the law with respect to the issue involved in this case.