525 So.2d 1216 (1988)
POWERHOUSE WHOLESALE ELECTRICAL SUPPLY, INC.
v.
SPARTAN BUILDING CORPORATION.
No. CA 87 0564.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*1218 Judy Cannella Schott, New Orleans, for plaintiff, appellant.
James I. Regan, Covington, for defendant, appellee.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
This case involves a dispute between a general contractor and the assignee of a subcontractor, which arose after the owner of the 1984 Louisiana World's Fair, Louisiana World Exposition, Inc. (LWE), filed for bankruptcy before having fully paid its general contractors. Here, LWE entered into a construction contract with a general contractor, Spartan Building Corporation (Spartan), for one of the Fair's projects known as the "Logo Shops" project. Spartan subcontracted the electrical work on the project to a subcontractor, Sunbelt Electrical Contractors, Inc. (Sunbelt). On October 22, 1984, after the project was completed, Sunbelt made a general assignment of several of its accounts receivable, including those arising out of the Logo Shops project, to plaintiff, Powerhouse Wholesale Electrical Supply, Inc. (Powerhouse). Powerhouse was a supplier of electrical materials to Sunbelt.
After LWE failed, Powerhouse, as assignee of the subcontractor Sunbelt, demanded payment from Spartan for the work satisfactorily completed by Sunbelt. Defendant, Spartan, relying on a certain provision in the subcontract known as a "pay when paid" clause, refused to make final payment. This clause of the subcontract provides, in pertinent part:
IN CONSIDERATION WHEREOF, The said Contractor agrees that he will pay to the said Sub-Contractor the sum of Thirty-six Thousand Three Hundred Dollars and No/100 ($36,300.00) for such materials and work, said amount to be paid as follows: Ninety per cent (90%) of the value of the work completed and accepted each month for which payment has been made by said Owner to said Contractor, to be paid on or about the 25th of the following month except that final payment will be made by said Contractor to said Sub-Contractor immedifately [sic] following final completion and acceptance of such materials and work by the Architect, and final payment received by said Contractor ... (Emphasis Added)
Spartan also claimed that the assignment from Sunbelt to Powerhouse was invalid because (1) Sunbelt failed to get Spartan's consent to the assignment as required in the subcontract, and (2) the assignment failed to meet the requirements of the Louisiana Assignment of Accounts Receivable Act (La.R.S. 9:3101, et seq). Alternatively, in the event the court found that Spartan did owe payment to Powerhouse, Spartan claimed set-off and compensation as a result of damages incurred when Sunbelt breached its contract on a separate, unrelated project known as the Sea King Restaurant project.
Trial was held on the matter, after which the trial court took the case under advisement. In written reasons for judgment, the court found that the assignment of accounts receivable from Sunbelt to Powerhouse was valid. However, the court ruled in favor of the general contractor, Spartan, holding that the effect of the "pay when paid" clause in the subcontract made payment by the owner to the contractor a suspensive condition to the contractor's obligation to make payment to its subcontractor. Thereafter, plaintiff Powerhouse perfected this appeal, urging as its only assignment of error that, pursuant to a recent decision of the Louisiana Supreme Court, the trial court erred in holding that the subcontract contained a suspensive condition. Defendant Spartan concedes on appeal that the trial court's interpretation of the "pay when paid" clause is contrary to the recent Supreme Court case. However, Spartan answered plaintiff's appeal, urging four assignments of error of its own in the event the trial court is reversed. These are as follows:
(1) The trial court erred in concluding the assignment was valid without the required consent of Spartan.

*1219 (2) The trial court erred in concluding the assignment was valid as it failed to comply with the requirements of the Louisiana Assignment of Accounts Receivable Act.
(3) The trial court erred in admitting Change Order No. 1 (Plaintiff's Exhibit B-1) into evidence as it is an unsigned document and there was no evidence that the work described therein was actually performed by Sunbelt.
(4) Spartan is entitled to set-off the amount of damages incurred on the Sea King Restaurant project against any sum which it may be held to owe Powerhouse.

"PAY WHEN PAID" CLAUSE
Recently, in two consolidated cases factually on point with the case at bar, the Louisiana Supreme Court concluded "that the contract provisions reciting essentially that the subcontractor would receive payment after receipt of payment by the general contractor from the owner (the so-called `pay when paid' clauses) are not suspensive conditions, but rather terms for payment which only delay the execution of the respective general contractors' obligations to make payment, and then only for a reasonable period of time." Southern States Masonry, Inc. v. J.A. Jones Construction Company, 507 So.2d 198 (La. 1987). Clearly, the trial court's interpretation of an identical clause is contrary to this decision. Accordingly, the judgment of the trial court rejecting the demands of plaintiff on this basis must be reversed, subject to our determination of the issues presented by defendant-appellee Spartan.

VALIDITY OF ASSIGNMENT
First, Spartan claims that the assignment of accounts receivable from Sunbelt to Powerhouse is invalid because Sunbelt failed to get written consent from Spartan as required in the subcontract. Paragraph 8 of the subcontract provides that the contract may not be assigned by the subcontractor without the written permission of the general contractor. In this case, the subcontractor Sunbelt completed the electrical work on the Logo Shops project which it agreed to do in the subcontract. We feel that the language used in Paragraph 8 of the subcontract envisions the situation wherein one subcontractor wishes to assign the contract to another subcontractor in order that the assignee-subcontractor complete the work owed under the original subcontract. Here, Sunbelt did not assign the contract to Powerhouse, but its interest in the accounts receivable arising out of Sunbelt's performance of the work owed under the Logo Shops project subcontract. Moreover, the provision of the subcontract in question is only effective as between the parties to the agreement. Spartan may have some recourse against Sunbelt for any alleged breach of the subcontract; however, such breach, if any, cannot be the basis for denying Powerhouse's claim against Spartan. See Super Construction Co., Inc. v. New Orleans Levee Board, 286 So.2d 134 (La.App. 4th Cir.1973), writ denied, 288 So.2d 643 (La.1974). This principle is supported by a provision of the Louisiana Assignment of Accounts Receivable Act which states that, once a notice of assignment is filed, the assignment shall be valid as to third parties notwithstanding the fact that any debtors of the account are not notified or do not consent to the assignment. La.R.S. 9:3102(B).
In its second assignment of error, Spartan contends that the assignment is invalid due to its failure to comply with the requirements of the Louisiana Assignment of Accounts Receivable Act (La.R.S. 9:3101, et seq). Specifically, Spartan claims that the notice of assignment of accounts receivable filed in the instant case failed to contain a description of the accounts assigned, as required by La.R.S. 9:3103.
La.R.S. 9:3101 through 9:3111 is not to be considered as the exclusive method of assigning accounts receivable, but instead provides an additional method for doing so. However, if the parties file a notice of assignment, then the Act shall provide the exclusive method by which the assignee may perfect a security interest in those accounts receivable assigned. La.R. S. 9:3109. A "perfected security interest" *1220 is defined in the Act as an assignment of accounts receivable effective against third persons. La.R.S. 9:3101(7). Third parties are not affected by an assignment of accounts receivable until the filing of the notice of assignment in the manner prescribed by the Act. La.R.S. 9:3102. Section 3103 of the Act provides a sample written form for the notice of assignment. It requires only that the form of notice used be "substantially" as stated in the statute. The sample form includes a general description of the accounts assigned. La.R.S. 9:3103. As stated above, however, filing of the notice merely renders the assignment effective against third parties. Moreover, it is effective whether or not any debtor(s) of the account are notified of or consent to the assignment. La.R.S. 9:3102.
As between the parties, an assignment is valid and effective at the time the parties enter into the first evidence of the assignment. La.R.S. 9:3102. An assignment may be evidenced, among other methods, by a separate written act of assignment signed by the assignor. La.R.S. 9:3105. As respects the account debtor, he must receive written notice of the assignment, in which case he will not be discharged from his debt if he pays anyone other than the assignee. La.R.S. 9:3108.
In the instant case, Sunbelt and Powerhouse executed a separate written Act of Assignment of Accounts Receivable, in which Sunbelt made a general assignment of accounts receivable from four specified operations or projects, including the Logo Shops project. As such, the assignment is valid as between the parties. The issue of the validity and effect of the assignment as to third parties, since the notice of assignment failed to include a general description of the accounts assigned, is not pertinent here. Based on the provisions discussed above, an account debtor is not considered a third party with respect to the Act. Furthermore, the written notice which is owed an account debtor only affects his liability in the event he pays someone other than the assignee. Spartan does not contend, nor does the evidence suggest, that the present case involves such a situation. As such, we find that the assignment of accounts receivable is valid.

AMOUNT DUE BY SPARTAN
In its third assignment of error, Spartan claims that, in the event of judgment against it, the amount owed should not include the amount of Change Order One. The subcontract between Spartan and Sunbelt provides in Paragraph 7 that no extra work or changes will be recognized or paid for unless agreed to in writing before the work is done or the change is made. At trial, plaintiff Powerhouse introduced into evidence Change Order One as Exhibit B-1, over the objection of defendant Spartan. Change Order One, dated May 9, 1984, purports to add $3,537.00 to the previous contract amount of $36,300.00, due to modifications to the subcontract agreement. Change Order One is not signed.
Plaintiff Powerhouse also introduced into evidence Change Order Two, dated June 4, 1984. It is signed and recites the "Previous Contract Amount" to be $39,837.00, which figure includes the amount of Change Order One. Powerhouse contends on appeal that Spartan owes the amount of Change Order One because Change Order Two is signed and includes in its calculations Change Order One.
We agree with defendant Spartan that plaintiff failed to prove its entitlement to the amount of Change Order One. First, plaintiff was unable to produce a signed copy of Change Order One. Also, plaintiff failed to produce any witness to testify that the work listed in Change Order One was actually completed by Sunbelt. Finally, Terrence Donahue, President of Spartan, testified at the trial that, just because Change Order Two was signed and its total figure included the previous change order, it does not mean that the work on Change Order One was actually performed or authorized. Therefore, we find that Spartan is not liable for the amount of Change Order One.
By means of its final assignment of error, defendant Spartan contends that it is *1221 entitled to a set-off or compensation against any amount it is found to owe to Powerhouse. On June 21, 1984, Sunbelt entered into a job project with Spartan in Hammond, Louisiana, whereby Sunbelt was the electrical subcontractor and Spartan was the general contractor on the Sea King Restaurant project. Sunbelt abandoned the project before its completion, as a result of which Spartan hired a second electrical subcontractor to complete the job. Spartan contends on appeal that it is entitled to compensation for the amount of the cost overrun and damages for delay of the project. Spartan and Powerhouse stipulated in this case that, if Spartan proved a breach of the Sea King Restaurant project by Sunbelt and damages as a result thereof, the amount of such damages arising prior to the filing of the Notice of Assignment of Accounts Receivable by Powerhouse will be a set-off or credit against any sum for which Spartan may be cast in judgment.[1] The Notice of Assignment of Accounts Receivable was filed of record in St. Tammany Parish on October 24, 1984.
Set-off, or compensation as it is phrased in the Civil Code, takes place by operation of law when two persons are mutually indebted to each other. La.Civ. Code art. 1893. However, for compensation to be applicable, two distinct debts, equally liquidated and demandable, must exist contemporaneously. United States Fidelity & Guaranty Company v. Southern Excavation, Inc., 480 So.2d 920 (La. App. 2d Cir.1985), writs denied, 481 So.2d 1337 and 1339 (La.1986). As stipulated to by the parties in this case, the burden of proving compensation rests with the proponent of the plea. To sustain this burden, the proponent must prove by a preponderance of the evidence that the claim urged as a set-off to plaintiff's claim is equally liquidated and demandable, i.e., that the amount of each is for a certain amount capable of ascertainment by mere calculation in accordance with accepted legal standards. United States Fidelity & Guaranty Company v. Southern Excavation, Inc., supra.
Our review of the evidence reveals the following facts: Sunbelt's last day on the Sea King project, as evidenced by the daily project record, was September 11, 1984. The planned completion of the project was September 27, 28 or 29. Spartan hired Bill's Electric Co. under a time and material contract to finish the job. Clearly, Sunbelt breached its obligation to complete the project under the subcontract.
It is not clear from the record when the Sea King Restaurant project was actually completed. Terrence Donahue, President of Spartan, testified that the job was finished by October 31, 1984. An electrician with Bill's Electric Co. testified that their last billing was dated October 24, 1984. It is not clear how many of the days of delayed completion of the project were caused by Sunbelt's breach of contract, rather than, for instance, bad weather or the acts of other subcontractors. We find that Spartan failed to prove damages for delay of completion of the Sea King project.
The amount of the original Sea King Restaurant project subcontract between Spartan and Sunbelt was $12,700.00. When Sunbelt abandoned the job, Spartan had paid $10,285.19 to Sunbelt and various materials suppliers. Thus, there existed a credit balance of $2,414.81 on the subcontract at that time. At trial, Spartan offered evidence of three subsequent payments that it made. The first was made to Bill's Electric Co. on October 8, 1984, in the amount of $4,818.15. The second was made to Vaughan's Electric on October 23, 1984, in the amount of $180.00. The third was made to Bill's Electric Co. on October 31, 1984, in the amount of $7,655.57. Spartan is entitled to a set-off or compensation for the first two payments, as they were made prior to October 24th, the date of the *1222 filing of the Notice of Assignment of Accounts Receivable. Spartan is not entitled to compensation for the third payment made on October 31, 1984. Moreover, the amount of compensation is subject to the credit balance which existed on the original subcontract. In conclusion, Spartan is entitled to compensation in the amount of $2,583.34 against the amount it owes to Powerhouse.

CONCLUSION
In accordance with the foregoing, and as evidenced by Plaintiff's Exhibit D, Powerhouse is entitled to a judgment in their favor, and against defendant Spartan, in the amount of the original contract amount, $36,300.00, plus the amount of Change Order Two, $10,310.00, minus payments received by Sunbelt totalling $18,808.85, minus compensation allowed Spartan in the amount of $2,583.34.
Thus, the judgment of the trial court is reversed and recast as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Powerhouse Wholesale Electric Supply, Inc., and against defendant, Spartan Building Corporation, in the amount of $25,217.81 plus legal interest from date of judicial demand until paid, and for all costs of these proceedings.
Costs of this appeal are assessed against defendant, Spartan Building Corporation.
REVERSED AND RENDERED.
NOTES
[1] This stipulation is in conformity with La.Civ. Code art. 1900, which provides, in pertinent part:

An obligor who has been given notice of an assignment to which he did not consent may not claim compensation against the assignee for an obligation of the assignor arising after that notice.