630 So.2d 857 (1993)
Tanya EALY, et al., Plaintiffs-Appellants,
v.
The HERTZ CORPORATION, Defendant-Appellee.
No. 93-93.
Court of Appeal of Louisiana, Third Circuit.
December 29, 1993.
Robert C. Thomas, Natchitoches, for Tanya Ealy et al.
George P. Hebbler Jr., New Orleans, for The Hertz Corp.
Peggy Dean St. John, Alexandria, for Allstate Ins.
Charles B. Bice, Winnfield, for Charles Tomlinson.
*858 Before: YELVERTON, KNOLL, THIBODEAUX, WOODARD and DECUIR, JJ.
YELVERTON, Judge.
This case is a matter of interpreting a contract. The contract was between Sam Ealy and Hertz Corporation. Ealy rented a van from Hertz and signed a contract called a rental agreement. The contract gave Ealy limited protection against liability to third parties.
Sam Ealy was driving the van in Vernon Parish when he had a wreck. Elejah Ealy, child of Tanya and Michael Ealy, was killed. Sam Ealy was also killed in the accident.
The child's parents sued Hertz for damages for Elejah's wrongful death. Hertz put up $20,000, claiming that that was its liability protection limit per accident. Hertz relied on language in the contract which fixed its liability protection limit as the same as the automobile financial law of the jurisdiction in which the accident occurred. The plaintiffs claimed that Hertz's contractual liability for death caused by Sam Ealy was unlimited. They claimed that only Hertz's liability for bodily injury and property damage was limited to the Louisiana statutory minimum.
In the trial court both sides filed motions for summary judgment. The trial judge granted Hertz's motion, holding that Hertz owed $20,000 and no more. The trial court reasoned that a fair reading of the rental agreement in its entirety revealed that Hertz's liability for death was limited by the Louisiana statutory minimum just as its liability for bodily injury and property damage was limited.
The parents of the child appealed. We affirm.
The liability protection provision contained in Paragraph 10 of the rental agreement between Hertz and Sam Ealy provided, in part:
(a) Hertz will indemnify, hold harmless, and defend You and any Authorized Operators FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR OR ANY AUTHORIZED OPERATOR'S FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING WITH YOU OR THEM. For bodily injury and property damage the limits of this protection, including owner's liability, are the same as the minimum limits required by the automobile financial responsibility law of the jurisdiction in which the accident occurred...
Reading the contract between Sam Ealy and Hertz as a whole, it is clear that bodily injury was intended to include death. The clarity as to this intention is achieved in two ways. First, the expressed limits of the protection offered for bodily injury and property damage are "the same as the minimum limits required by the automobile financial responsibility law of the jurisdiction in which the accident occurred ..." The accident here occurred in Louisiana, and our state law on the subject, La.R.S. 32:861 and 900(B)(2), requires limits of $10,000 because of bodily injury to or death of one person in any one accident; $20,000 because of bodily injury to or death of two or more persons in any one accident, and $10,000 because of bodily injury to or destruction of property of others in any one accident. By making its coverage the same as the minimum limits required by Louisiana's automobile financial responsibility law, Hertz contracted to include death as well as bodily injury. Therefore, its limitation of liability applied to death claims as well as bodily injury claims.
The second way that the rental agreement clarifies the limitation on its coverage is in its offer of optional additional coverage up to $1,000,000. The rental agreement, explaining the availability of supplementary coverage, contains this language:
LIS [Liability Insurance Supplement] provides protection from third party automobile claims for the difference between the liability protection limits provided under Paragraph 10 of the Agreement and a maximum combined single limit of One Million ($1,000,000) Dollars for bodily injury, including death and property damage. (underlining ours)
*859 We quote with approval the following reasons for judgment given by the trial court explaining its interpretation of this language and the rental agreement as a whole:
The words of a contract must be given their general, popular and prevailing meaning. C.C. Art. 2047. Any ambiguity in an insurance contract is to be construed against the insurer, the author of the agreement, and in favor of the insured. That rule, however, is inapplicable if dependent on strained construction. Wallace v. Huber, 597 So.2d 1247, 1249 (3rd Cir. 1992). A contract must be interpreted as a whole, and all provisions thereof must be construed together to ascertain the true intent of the parties. C.C. Art. 2050; Elledge v. Warren, 263 So.2d 912 (3rd Cir. 1972).
Construing all pertinent provisions of the contract together, I am of the opinion that the limitations provided included death. To hold otherwise would lead to an inequitable and absurd result. C.C. Art. 2046.
The rental agreement gave Sam Ealy no reasonable basis for believing that liability protection was limited for personal injury and property damage, but unlimited for death claims. The intent of the parties was that the limitation would apply to all claims.
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
THIBODEAUX, J., dissents and assigns reasons.
KNOLL, J., dissents for the reasons assigned by THIBODEAUX.
THIBODEAUX, Judge, dissenting.
The "Liability Protection" provision contained in paragraph 10 of the rental agreement provides in part:
(a) Hertz will indemnify, hold harmless, and defend You and any Authorized Operators FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR OR ANY AUTHORIZED OPERATOR'S FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING WITH YOU OR THEM. For bodily injury and property damage the limits of this protection, including owner's liability, are the same as the minimum limits required by the automobile financial responsibility law of the jurisdiction in which the accident occurred... (Emphasis added).
The "Liability Insurance Supplement (LIS) Summary of Coverage" provides in part:

* * * * * *
LIMITS
LIS provides protection from third party automobile claims for the difference between the liability protection limits provided under Paragraph 10 of the Agreement and a maximum combined single limit of One Million ($1,000,000.00) Dollars for bodily injury, including death and property damage. LIS also provides uninsured and underinsured motorists coverage for bodily injury and property damage, if applicable, for the difference between the statutory minimum underlying limits and $100,000 limit of insurance for each accident. (Emphasis added).
It is the absence of the word "death" in the "Liability Protection" provision which is the focal point of this controversy. Plaintiffs argue that its absence from the provision means Hertz is liable to the full extent for damages arising from the death of the child and attributable to the fault of Sam Ealy. Hertz argues that the provision should not be read individually and that, when the rental agreement is read as a whole, its clear intent is to limit Hertz's exposure for all potential liability, including death, to the statutorily required minimums, unless the supplemental coverage is chosen. In this case, Mr. Ealy declined the supplemental coverage.
La.Civ.Code art. 2045 states that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ.Code art. 2050 mandates that we read each provision of a contract in light of the other provisions so that the meaning of the contract as a whole may be obtained.
When the two provisions of the rental agreement are read together, as the Civil *860 Code demands, there is an obvious ambiguity. The "Liability Protection" provision states that only "bodily injury and property damage" are limited to the statutory minimum. It is silent regarding coverage for death. The supplemental coverage provision discusses coverage for death in addition to the original liability coverage. In the very next sentence, however, it again excludes death in discussing uninsured or underinsured motorist coverage. When the provisions are read together, the intent of the parties concerning coverage for death cannot be discerned.
Article 2056 of the Louisiana Civil Code states:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in standard form of one party must be interpreted, in case of doubt, in favor of the other party.
The foregoing article codifies longstanding jurisprudence holding that contracts with doubtful or ambiguous language are to be interpreted against the drafter. The majority quotes with approval the trial court's reliance on Wallace v. Huber, 597 So.2d 1247 (La.App. 3d Cir.1992), which holds that ambiguous language of a contract is not always interpreted in favor of the insured where the favorable construction is so strained as to lead to absurd consequences. It concluded that the rental agreement, when read as a whole, limited Hertz's liability to the statutory minimum, and that "[t]o hold otherwise would lead to an inequitable and absurd result."
We fail to see the potential "inequitable and absurd result" that concerned the trial judge and the majority. The provisions do not clearly indicate the intent of the parties. As the drafter of the rental agreement, Hertz bore the onus of simplifying the language so that it may be understandable to the layman.
The simple insertion of "death" or "including death" after the words "bodily injury" in the "Liability Protection" provision of the rental agreement would have eliminated the ambiguity and provided a measure of consistency in the wording of the agreement. In this instance, Hertz may have oversimplified the language, resulting in an unfortunate ambiguity. The word "death" was included in the "Liability Protection" section until around 1988. Hertz says that it was deleted to make the document more compact, convenient, and readable. The record is clear, however, that Hertz left intact that very word following "bodily injury" in its "Liability Insurance Supplement" provision of the rental agreement. Our function is not to question the wisdom of the omission of "death" in the "Liability Protection" section or the inclusion of "death" in the "Liability Insurance Supplement" portion of the contract. Parties to a contract will not be imputed with using language that is meaningless or without effect. John Bailey Contractor, Inc. v. State of Louisiana, through DOTD, 439 So.2d 1055 (La.1983). Furthermore, as this court has previously stated in American Manufacturing Corporation v. National Union Fire Insurance Company, 14 So.2d 430, 433 (La.1942), cited with approval by this court in Taylor v. Woodpecker Corporation, 539 So.2d 1293, 1296 (La.App. 3d Cir.1989):
"The court will not presume, that parties make use of words in their contracts to which no meaning is attached by them. Some effect is to be given to every word, if possible, and rarely will the court reject words or phrases in a contract as surplusage."
Perhaps Hertz intended to limit recovery for wrongful death to the minimum limits under Louisiana's automobile financial responsibility law. However, that is not the effect of the language used in its rental agreement. Why, as the plaintiff asks, would Hertz exclude the term "death" from the limiting provision of the "Liability Protection" provision while at the same time, include the word "death" in that portion of the rental agreement which explains the provisions of the Liability Insurance Supplement?
In essence, Hertz may have intended to exclude unlimited coverage for death. However, the words of the agreement did not accomplish this result. Hertz's use of inconsistent *861 language provisions made its own agreement ambiguous and vague. The parents of the fatally injured young girl should not be saddled with recovery limitations because of Hertz's oversights and carelessness in the preparations of its "take it or leave it" contract. Hertz should bear the economic consequences of its imprudent deviation from proper draftsmanship of its legal documents.
For the reasons assigned, I respectfully dissent.