670 So.2d 1378 (1996)
Kenneth DUCOTE, et al., Plaintiffs-Appellees,
v.
CITY OF ALEXANDRIA, Louisiana, Defendant-Appellant.
No. 95-1197.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
Rehearing Denied April 24, 1996.
*1381 Honorable Donald Johnson, District Judge, presiding.
Daniel Elmo Broussard, Jr., Alexandria, for Kenneth Ducote et al.
Charles Freeman Nunnally, III, Alexandria, for City of Alexandria Louisiana.
Before PETERS, AMY and SULLIVAN, JJ.
AMY, Judge.
This appeal arises from a class action in which the City of Alexandria was held liable under a contract it entered into with the Local No. 1848 of the American Federation of State, County and Municipal Employees, AFL-CIO. The trial court held that the City was liable for anniversary-based increases in pay, as provided for in the contract, to all members of the class from July 1, 1988 to July 31, 1990. For the reasons which follow, we affirm.

DISCUSSION OF THE RECORD
On November 13, 1987, the City of Alexandria (hereafter "City") entered into a Working Agreement (hereafter "Agreement") with Local No. 1848 of the American Federation of State, County and Municipal Employees, AFL-CIO (hereafter "Union"). Article IX, Section 1, of the Agreement provides as follows:
Employees who have been continuously employed without break in service of one (1) or more working days, for a period of six (6) months, shall be granted a one-step increase in pay. At the end of each twelve (12) month period thereafter, employees shall be granted one (1) additional step increase unless they are notified in writing the reason the increase was not effected. However, when funds are unavailable, a blanket notice to all shall suffice. Provided that no step increase shall exceed the maximum for the job classification under Civil Service pay plan.
Article XIII of the Agreement provides as follows:

Section 1: This Agreement represents the entire Agreement between the parties hereto, and no modification or amendment thereof shall be binding unless agreed to in writing.

Section 2: It is understood and agreed that if any part of this Agreement is in conflict with Federal or State Laws, such part shall be suspended and the appropriate statutory provision shall prevail and the remainder of this Agreement shall not be effected thereby.

Section 3: Nothing in this Agreement shall be construed in such a way as to violate applicable Civil Service laws.
Article XIV provides, in pertinent part, that "[T]his Agreement shall be effective on the 1st day of November, 1987, and shall remain in full force until the 30th day of July, 1990."
The Agreement was signed on November 13, 1987 by the Mayor of the City, Edward G. Randolph, Jr., and the following representatives of the Union: Caroll M. Baillio, president; Kenneth Ducote, vice-president; Ina LaBorde, Union Representative; and Darren K. Sigur, member.
The pay plan, in effect at the time the Agreement was entered into, classified the various city employees. Within each classification was a provision for minimum pay and maximum pay. Between the minimum and maximum limits were thirteen (13) steps. Each step within the minimum and maximum range for each classification constituted a five (5%) percent difference in pay.
The record establishes that from 1987 to 1990, city employees did receive increases in pay, but none were attributed to the anniversary-based step increases provided for in the Agreement. One increase was given to all city employees pursuant to an across-the-board pay increase in June of 1988. Another increase resulted from the adoption of a new pay plan, the Waters-Trego plan, in December of 1988 in which city employees were reclassified. According to the testimony of Ms. Joan Montou, assistant director of personnel for the City, all city employees, with the exception of one or two, received an increase in pay as a result of the reclassification of City employees under the new pay plan.
The Waters-Trego plan provides each job classification with a minimum pay, a midpoint, *1382 and a maximum pay, without "steps" between the minimum and maximum pay. It also provides for merit-based increases in pay to be given according to guidelines to be later established by the city administration. However, according to the testimony of Mr. Richard Moriarity, personnel director and civil service director of the City when the Waters-Trego plan was adopted, the city never formulated any guidelines. The Waters-Trego Plan was adopted by the city council and took effect in December of 1988.
Mr. Kenneth Ducote, the plaintiff who initiated this action, had an anniversary date of July 15 under the Agreement. He received an increase in pay in June of 1988 as part of the across-the-board raise for all city employees, but he did not receive an anniversary-based step increase in July of 1988. On September 9, 1988, Mr. Ducote filed a grievance pursuant to the procedure outlined in the Agreement. His grievance eventually went to the Mayor's office, but no action was taken. Mr. Ducote never received anniversary-based increases under the Agreement.
On November 8, 1989, Mr. Ducote filed suit against the City on behalf of himself and all others employed by the city and covered by the Agreement. On February 27, 1991, an amended petition was filed adding Wilson Sarpy, Jr., Roosevelt Lee and Roger Pryor as named plaintiffs. A trial on the merits was held on July 14, 1993.
At trial, plaintiff made an oral motion requesting the court to certify the action as a class action. The court granted the motion certifying the class and limiting the class to city employees who were members of the Union from July 1, 1988 to July 31, 1990. The court also ordered plaintiff to notify all potential class members of the action and to give them the opportunity to opt out of the class. Plaintiff complied with the order subsequent to the trial on the merits, but prior to judgment being rendered. After the trial on the merits, the court rendered judgment in favor of plaintiffs on liability, but awarded no damages. The court left it up to the parties to work out an agreement as to how much was going to be paid to each plaintiff. The court further provided that in the event the parties could not agree, either party could request a trial on damages pursuant to La.Code Civ.P. art. 1878.
Defendant timely perfected this appeal asserting that the trial court erred in: (1) certifying the action as a class action; (2) granting step increases to plaintiffs from December 1988 to July 1990; and (3) not granting the City any set-off for pay increases given from the period of July 1, 1988 through July 30, 1990.

ANALYSIS

FINAL JUDGMENT
Although a motion to dismiss the appeal has not been filed, we deem it necessary because of the unusual posture of this case, to consider whether the trial court's judgment on liability alone is a final appealable judgment. If it is not a final appealable judgment, the appeal should be dismissed ex proprio motu as there is no right to an appeal. La.Code Civ.P. arts. 2083 and 2162; Marcotte v. Exper Tech Co. USA, 452 So.2d 436 (La.App. 3 Cir.1984). For the following reasons, we conclude that it is a final appealable judgment under La.Code Civ.P. art. 1915.
La.Code Civ.P. art. 2083 provides that an appeal may be taken from a final judgment. As to whether a court's ruling on liability alone, while deferring its ruling on damages to a later proceeding, constitutes a final judgment, we note that La.Code Civ.P. art. 1915 provides as follows:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, except a summary judgment *1383 rendered pursuant to Article 966(D).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
B. If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case.
Therefore, under Article 1915, an appeal may be taken from a judgment, signed by the court, which adjudicates less than all of the issues before the court. In order to have the right to an appeal from a partial judgment, it must be covered by one of the five paragraphs of La.Code Civ.P. art. 1915(A), as this article provides an exclusive list of when an appeal can be taken from a partial judgment. Sledge v. Continental Cas. Co., 25-770 (La.App. 2 Cir. 6/24/94), 639 So.2d 805.
In reaching our decision, we have considered jurisprudence which indicates that a judgment disposing of liability alone is a partial judgment, not subject to appeal. Economy Carpets v. Better Business Bureau, etc., 351 So.2d 1246 (La.App. 1 Cir.), writ denied, 352 So.2d 1041 (La.1977); Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3 Cir.1976); Powell v. Continental Insurance Company, 212 So.2d 739 (La.App. 1 Cir.1968); Bettencourtt v. Boyd, 209 So.2d 339 (La.App. 1 Cir.1968). These cases held that a partial judgment, adjudicating liability alone, and leaving quantum to be decided at a subsequent trial, is not an appealable final judgment. However, the former text of La. Code Civ.P. art. 1915 did not contain paragraph 5 of the present article which provides that a partial judgment disposing of liability and leaving quantum for a separate trial is an appealable final judgment.
Under La.Code Civ.P. art. 1915 as amended in 1983, an appeal can be taken from a partial judgment when the court "[s]igns a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury." [Emphasis added]. Therefore, an appeal is now proper from a partial judgment which decides only the issue of liability when the issue of damages is reserved for trial at a later date.
In Duhon v. Allstate Ins. Co., 480 So.2d 782 (La.App. 3 Cir.1985), this court held that a judgment similar to the one in the case sub judice was a final appealable judgment under La.Code Civ.P. art. 1915(A)(5). In Duhon, the trial court rendered judgment in favor of the plaintiffs. Defendant was found to be seventy-eight (78%) at fault and plaintiffs were found to be twenty-two (22%) at fault. Plaintiffs filed a motion for new trial, or in the alternative, additur on the issue of damages. They also filed a motion for a judgment notwithstanding the verdict. The trial court granted the JNOV reversing the jury's verdict on liability, finding defendant to be one hundred (100%) percent at fault. The trial court also granted the motion for new trial on the issue for damages. Defendant appealed the JNOV. Plaintiffs filed a motion to dismiss the appeal arguing that the JNOV was a partial unappealable judgment. This court held that since liability had been decided by the trial court and since the issue of damages was reserved for trial at a later date in front of a different jury, La.Code Civ.P. art. 1915(A)(5) applied; therefore, the JNOV was a final appealable judgment.
Although Duhon is procedurally distinguishable from the case sub judice, we find that the end result was virtually the same in that a trial was held on both liability and damages; the trial court conclusively decided liability; and the trial court, although having heard evidence on damages, separated the issue and left it for trial at a later date. The judgment of the trial court in the instant case provides as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of petitioners.... *1384 and against defendant.... declaring that each member of the class is entitled to a one step increase in pay on their respective anniversary dates occurring during the period from July 1, 1988 to July 31, 1990, all as provided in Article IX, Section 1, of the Collective Bargaining Agreement existing between defendant.... and petitioner.... dated November 13, 1987.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that upon this Judgment becoming final, any party may request that a trial be set to determine the specific amounts that each individual plaintiff.... is entitled to, if any, all in accordance with La.CCP art 1878.
Furthermore, in its written reasons for ruling, the trial court said:
For the reasons stated above this court finds that the plaintiffs are entitled to the relief they seek. It is hereby ordered that the record be left open so that plaintiffs' and defendants' counsel can attempt to arrive at the amount of monies owed to each member of the class that would have been eligible for the anniversary increases. The court further orders that a supplemental hearing will be held in the event that counsels cannot agree what monies are owed.
Although we find that the trial court's procedure in separating the issues of damages and liability was unusual,[1] the two issues were still separated. Liability was conclusively decided, and damages, if they were going to be decided by the court, were going to be decided through a separate trial. We conclude that the judgment of the trial court, deciding liability alone, is a final appealable judgment. Therefore, we now turn our attention to appellant's three assignments of error.

LIABILITY
We first consider defendant's second assignment of error that the trial court erred by granting plaintiffs step increases from July 1, 1988 through July 30, 1990. At the outset we note neither the validity of the Agreement between the parties nor the validity of the Waters-Trego pay plan is in dispute.
In considering the question presented by defendant's second assignment of error, defendant asks us to accept the premise that the Agreement and the Waters-Trego pay plan are in conflict for the following two reasons: (1) The Waters-Trego pay plan does not contain steps between the minimum pay and maximum pay for each classification, and (2) the Waters-Trego pay plan only provides for merit-based pay increases. Based upon this premise, defendant argues that under Article XIII of the Agreement, which states that "[n]othing in this Agreement shall be construed in such a way as to violate applicable Civil Service laws," defendant is relieved of its obligation to grant the anniversary-based step increases provided for in Article IX of the Agreement. For the reasons explained below, we conclude that the Agreement does not conflict with the Waters-Trego pay plan and that defendant's argument is without merit.
Defendant argues that: the Civil Service Commission of the City adopted a pay plan, i.e., the Waters-Trego pay plan; that the Waters-Trego pay plan constitutes a rule adopted by the Civil Service Commission and the appropriate governing authority of the City; that rules adopted by the Civil Service Commission are given the "effect of law" under La. Const. art. 10 § 10; and that therefore, any agreement which is in conflict with the Waters-Trego pay plan is a violation of civil service laws within the meaning of Article XIII of the Agreement. As previously noted, Article XIII states that "[n]othing in this Agreement shall be construed in such a way as to violate applicable Civil Service laws." Our interpretation of Article XIII of the Agreement simply does not include such *1385 far reaching extensions. While we certainly agree that civil service rules adopted pursuant to La. Const. art. 10, § 10 must be given the effect of law, and that agreements in conflict with civil service rules may be abrogated to the extent they so conflict, we see no evidence in the record which would indicate that the parties to the Agreement intended Article XIII to extend to the situation that has arisen here. Furthermore, it is well settled that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ.Code art. 2050; See also First Nat. Bank of Commerce v. City of New Orleans, 555 So.2d 1345 (La.1990); Ealy v. Hertz Corp., 630 So.2d 857 (La.App. 3 Cir.1993), writ denied, 94-0074 (La. 3/25/94), 635 So.2d 236. In light of the Agreement as a whole, and especially in light of Article XIII, section 2, which states as follows:
It is understood and agreed that if any part of this Agreement is in conflict with Federal or State Laws, such part shall be suspended and the appropriate statutory provision shall prevail and the remainder of this Agreement shall not be effected thereby,
we conclude that Article XIII simply provides a rule for interpretation and construction of the remainder of the Agreement. In other words, Article XIII provides that if any provision of the Agreement is subject to more than one meaning, and one meaning would be violative of Civil Service law, while the other would not, then the provision "is to be construed" in the way that would not violate Civil Service law. Based upon the foregoing reasons, we conclude that defendant's reliance upon Article XIII is misplaced. However, even if we accept defendant's argument as one containing the proper conceptual framework, and analyze the facts of this case as it requests, we conclude that the Agreement does not conflict with the terms of the Waters-Trego pay plan. Therefore, defendant's argument under either analysis is without merit.
The record establishes the following: the Waters-Trego pay plan sets a minimum pay schedule and a maximum pay schedule for each classification of city employee, without "steps" in between; the Waters-Trego plan provides for increases in pay, but only for merit-based increases; the Waters-Trego merit-based increases were to be given pursuant to guidelines to be established by the city's administration; anniversary-based increases given to city employees in the past were in addition to other increases awarded by the City administration; and, as a general rule, decisions regarding increases in pay, other than those provided by law, were made by city administration and were within its discretion.
Based upon the foregoing, we conclude that granting anniversary-based step increases under Article IX of the Agreement did not conflict with or violate the Waters-Trego plan as long as it did not result in an employee's pay exceeding the maximum pay limit established by the Waters-Trego plan. And since the Agreement itself provided that the "step" increase would not be given if the individual employee had reached the maximum pay set by the City's pay plan, we conclude that the Agreement was not in violation of the Waters-Trego pay plan. Furthermore, since anniversary-based increases, in the past, were given in addition to other pay increases granted to the City's employees, the Waters-Trego pay plan does not preclude raises other than the merit-based increases, given pursuant to the City administration's discretion.
Therefore, we conclude that Article IX of the Agreement was still binding and that plaintiffs are entitled to the anniversary-based "step" increases as provided for under the Agreement. Additionally, we note that under Article IX of the Agreement, the defendant could deny an individual employee the anniversary-based step increase, provided it notified the employee, in writing, the reason the increase was not being granted. Also, the defendant could deny the increase when funds were unavailable, in which a blanket notice to all employees would have sufficed. However, there is nothing in the record indicating that defendant complied with these notice requirements.
Defendant further argues that it is not bound by the Agreement as there are no *1386 "steps" by which to compute the amount of the anniversary-based increase. We disagree. Whether or not damages in the case sub judice are subject to exact calculation is not now before this court because the question of damages has been reserved for later adjudication. Furthermore, liability and damages are two separate issues. Liability is not based upon the ability or the inability to calculate the exact amount due under a contract. Rather, when there is a legal right to recovery and there is no set way under the contract to determine the exact amount due, the trial court awards damages based upon all facts and circumstances of the case, and such award is within the trial court's discretion. La.Civ.Code art. 1999; See also Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971); Guillory v. Terra International, Inc., 613 So.2d 1084 (La.App. 3 Cir.), writ denied, 619 So.2d 1063 (La.1993). Therefore, this argument lacks merit.

SET-OFF
In defendant's third assignment of error, it argues that the trial court erred in not granting it any set-off for pay increases given from July 1988 through July 30, 1990. Set-off is an affirmative defense and as such it must be specifically pled in the defendant's answer. C & D Pressure Testing, Inc. v. Estate of Darbonne, 469 So.2d 1170 (La.App. 3 Cir.1985); La.Code Civ.P. art. 1005. Defendant pled as follows in its first supplemental answer:
City of Alexandria specifically pleads the affirmative defense of set-off in that plaintiff received salary increases during the fiscal year beginning May 1, 1988 in an amount equal to a step increase under the pay plan then in effect at the time that the working agreement was reached with the Union.
Because defendant met the procedural requirement of pleading set-off as affirmative defense, it then had the burden of proof with regard to its claim of set-off. Coburn v. Commercial Nat. Bank, 453 So.2d 597 (La.App. 2 Cir.), writ denied, 457 So.2d 681 (La.1984); Fontenot's Rice Drier, Inc. v. Farmers R. Mill. Co., Inc., 329 So.2d 494 (La.App. 3 Cir.), writ denied, 333 So.2d 239 (La.1976).
Statutory law and jurisprudence establish three types of set-off in Louisiana: (1) legal set-off, which is effected by operation of law; (2) judicial set-off, which is effected by the courts; and (3) contractual set-off, which is effected by the will of the parties to the contract. Tolbird v. Cooper, 243 La. 306, 143 So.2d 80 (1962); Fidelity & Deposit Co. of Maryland v. Cloy Const. Co., Inc., 463 So.2d 1365 (La.App. 1 Cir.1984), writ denied, 465 So.2d 723 (La.1985). Nonetheless, for any type of set-off to apply there must be a mutuality of obligations where each obligor owes the other a debt equally liquidated and demandable. See La.Civ.Code art. 1893; Hartley v. Hartley, 349 So.2d 1258 (La.1977); U.S. Fidelity & Guar. Co. v. Southern Excavation, Inc., 480 So.2d 920 (La.App. 2 Cir.1985), writ denied, 481 So.2d 1337, 1339 (La.1986); Fidelity & Deposit Co. of Maryland, 463 So.2d 1365.
In order for there to be mutuality of obligors, there must exist two distinct obligations with each party being a debtor with respect to one debt and a creditor with respect to the other. U.S. Fidelity & Guar., 480 So.2d 920. Under La.Civ.Code art. 1756, "[a]n obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee." Therefore, in order for defendant to be entitled to a set-off against plaintiffs, it must prove that there are two distinct obligations. With respect to one obligation, defendant must be bound to render a performance to plaintiffs, and with respect to the other, plaintiffs must be bound to render a performance to defendant. In other words, defendant must be the creditor with respect to one obligation and debtor with respect to the other and vice versa for the plaintiffs.
Defendant does owe an obligation to plaintiffs, i.e., the anniversary-based increases under the Agreement. However, the record contains no evidence of a separate and distinct obligation owed by plaintiffs to defendant. Notwithstanding, defendant argues that the amount to be set-off is the amount given in increases in pay other than the *1387 anniversary-based increases, given while the Agreement was in effect. This argument lacks merit since these previous raises do not represent an obligation owed by plaintiffs to defendant. Therefore, there is no mutuality of obligors and defendant is not entitled to set-off.

CLASS CERTIFICATION
Finally, we turn to defendant's first assignment of error, which asserts that the trial court erred in certifying the class. The certification of a class for a class action is governed by La.Code Civ.P. art. 591, et seq. La.Code Civ.P. art. 591 provides as follows:
A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
Under the preceding article, there are two prerequisites to class certification. They are known as the "numerosity" requirement and the "commonality" requirement. Defendant does not dispute that the character of the right sought to be enforced is common to all members of the class. Rather, defendant argues that the class does not meet the numerosity requirement, i.e., that the class was not so numerous as to make joinder impracticable.
There is no set number at which a class is considered so numerous as to make joinder impracticable. Whether a class is so numerous as to make joinder impracticable is based upon the facts and circumstances of each individual case. Dumas v. Angus Chemical Co., 25,632 (La.App. 2 Cir. 3/30/94), 635 So.2d 446, writ denied, 94-1120 (La. 6/24/94), 640 So.2d 1349. It is within the trial court's great discretion to determine if, under the facts and circumstances of the case before it, it is in the best interest of judicial efficiency and economy to certify the action as a class action. See Atkins v. Harcross Chemicals, Inc., XX-XXXX-XXXX (La.App. 4 Cir. 5/17/94), 638 So.2d 302, writ denied, 94-2158 (La. 11/11/94), 644 So.2d 396; Dumas, 635 So.2d 446. Therefore, a trial court's decision on whether a class meets the numerosity requirement will not be disturbed absent an abuse of discretion.
Defendant cites Phillips v. Orleans Parish School Board, 541 So.2d 226 (La.App. 4 Cir. 1989) and O'Halleron v. L.E.C., Inc., 471 So.2d 752 (La.App. 1 Cir.1985) in support of its argument that the numerosity requirement had not been met. In Phillips, the fourth circuit upheld the decision of the trial court denying class certification. There were only thirty-two (32) members of the class and all members lived in the same geographic area and their addresses were known. Based upon this information, the fourth circuit concluded that the trial court had not abused its discretion in denying the certification. In O'Halleron, the trial court denied class certification for two different classes, one composed of thirty-two (32) members and one composed of forty-nine (149) members. The first circuit concluded that the trial court had not abused its discretion in denying the certification. We do not believe these cases to be controlling as the defendant suggests.
The facts of this case are substantially different. There are one hundred and eighty-four (184) members of the class. Defendant suggests that the class size is considerably less since one hundred and nine (109) of those listed were not hired until after December of 1988; therefore, defendant argues that those members suffered no damages. However, this argument lacks merit since we have already concluded that plaintiffs are entitled to anniversary-based increases through July of 1990. Therefore, we consider the class size to be one hundred and eighty-four (184) members.
Based upon a review of the record, we cannot conclude that the trial court abused its discretion in deciding that a class action was the more appropriate vehicle to decide the rights of the parties. The joinder of one hundred and eighty-four (184) parties to a *1388 lawsuit could be inefficient and unduly burdensome upon the trial court. See Williams v. State, 350 So.2d 131 (La.1977). Therefore, the decision of the trial court to certify the class will not be disturbed.
Additionally, defendant argues that the class should not have been certified since the requirement of notice to all potential class members was not met until after trial. This argument lacks merit. In Williams v. State, 350 So.2d 131, 137, the Louisiana Supreme Court held that "due process requires that at some stage of the proceedings, preferably in the earlier stages of the litigation, all identifiable prospective members of the class be given reasonable notice of the pendency of the litigation and the opportunity to opt out of or join in the class action." Neither jurisprudence nor statutory law provides a specific deadline for such notice or the subsequent class certification, it is only preferable that it be given at earlier stages of the proceedings. O'Halleron, 471 So.2d 752. Furthermore, the time and the manner in which notice is given is subject to the sound discretion of the trial court. Livingston Pol. Jury v. Illinois Central Gulf Railroad, 432 So.2d 1027 (La.App. 1 Cir.1983). The record indicates that notice was given to all potential members of the class and that they were given the opportunity to opt out of the litigation. The notice was given subsequent to the trial on the merits, but prior to judgment being rendered. Defendant does not allege that notice and certification at this stage of the proceedings resulted in any prejudice; therefore, we conclude that this satisfies the due process notice requirements enunciated in Williams. See O'Halleron, 471 So.2d 752. Therefore, this assignment of error is without merit.

DECREE
Accordingly, the judgment of the trial court is hereby affirmed. All costs of this appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] The trial court's judgment stated that after the judgment on liability being rendered became final, either party may request a trial on damages in accordance with La.Code Civ.P. art. 1878. However, Article 1878 governs the application for supplemental relief based upon a prior declaratory judgment or decree. A request for a trial on damages would not be governed by this article since the decision on liability was rendered as a result of a trial on the merits rather than a declaratory judgment or decree.