NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 13-747


LORETTA DOWDEN

VERSUS

GINA CUTRIGHT, ET AL.


**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 64,376
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.


REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.

Steven E. Soileau
Mayer, Smith & Roberts, L.L.P.
1550 Creswell Avenue
Shreveport, LA 71101
(318) 222-2135
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Gina Cutright
    TAC Real Estate, LLC

**Rebecca L. Riall**
**Riall Law Office, LLC**
**P. O. Box 563**
**Zwolle, LA 71486**
**(318) 645-6265**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Loretta Dowden**

**EZELL, Judge.**

Loretta Dowden filed suit against Gina Cutright and her employer, TAC Real Estate, LLC, for injuries she received when she and Ms. Cutright got into a physical altercation. The trial judge allocated 100% of fault to Ms. Cutright and awarded $20,000.00 in general damages and $1,500.00 in future medical expenses for a tooth replacement to Ms. Dowden. Ms. Cutright and TAC Real Estate then filed the present appeal. For the following reasons, we reverse that part of the judgment awarding $1,500.00 in medical expenses. Otherwise, the judgment is affirmed.

## FACTS

Ms. Dowden lived with her son, Noah, at Lakeway Apartments in Zwolle, Louisiana. The apartments were owned by TAC Real Estate and managed by Ms. Cutright. On August 29, 2011, Ms. Dowden and her son went to the office at the apartments to report a disturbance, from her neighbors over the weekend, to Ms. Cutright. During this meeting, a fight between the two ladies ensued.

The version of the stories differs somewhat as to what exactly occurred. According to Ms. Dowden, Ms. Cutright was outside sweeping when they arrived. The two ladies and Noah went into the office. Ms. Dowden thought Ms. Cutright seemed angry. Ms. Dowden stated that Ms. Cutright said something about evicting her and went to the filing cabinet to get paperwork. At this point, Ms. Dowden indicated that she wanted to call Ms. Cutright's supervisor. In response, Ms. Cutright grabbed a phone and went over to Ms. Dowden, offering to dial the number. Ms. Dowden testified that Ms. Cutright said "hit me, b—ch, hit me." Ms. Dowden put her hands up and asked Ms. Cutright to step back. Immediately, Ms. Cutright hit Ms. Dowden in the left temple with the phone three times. Ms.

Cutright then pushed Ms. Dowden down and kicked her in the ribs and in the mouth and hit her twenty to thirty times with her fist.

Ms. Cutright then left and went outside. Noah helped his mother up, and they walked outside. As they were walking back to their truck, Ms. Dowden asked Ms. Cutright why she would not fill out a complaint on the neighbors and then accused her of sleeping with the neighbor.

It was then that Ms. Cutright used the broom she was sweeping with to start beating Ms. Dowden again. By this time, the police showed up. Everyone went to the police station, and both ladies were charged with simple battery. The officers also took pictures of Ms. Dowden's injuries, indicating the cuts and abrasions on the different parts of her body. Another picture showed a three-inch piece of plastic from the broom found in Ms. Dowden's hair.

Ms. Dowden then sought treatment for her injuries at Sabine Medical Center and LSU Shreveport Hospital. She was diagnosed with a nondisplaced fracture of a rib, acute contusion on her eye, and lacerations on her scalp and hand.

According to Ms. Cutright, Ms. Dowden was having a "raging fit" and calling her "black B's." Ms. Cutright testified that she told Ms. Dowden she had to leave the office or fill out the complaint, at which point Ms. Dowden slapped her in the face. She then walked around the desk and told Ms. Dowden she was going to call the police and have her evicted. She began to call the police, and Ms. Dowden grabbed her shirt and threatened to beat her. Ms. Cutright admits beating Ms. Dowden with the phone and then they hit the floor, with Ms. Cutright straddling Ms. Dowden. Ms. Cutright kept asking Ms. Dowden to turn her loose. "When [Ms. Cutright] got tired of beating her, [she] rared [sic] back . . . and kicked at her."

After Ms. Cutright finally got up, Ms. Dowden was still calling her names, so Ms. Cutright announced, "I'm going to do you a favor. Before I beat you to death, I'm going to leave out of this office." Ms. Cutright then left. On her way out, Ms. Dowden continued to call Ms. Cutright names and then "rapped" her across the arm, which is when Ms. Cutright began beating her with the broom in the back of her head. The police then showed up.

After Ms. Dowden told the police that Ms. Cutright hit her first, Ms. Cutright responded "[Y]ou thought you were going to slap me and just walk away. You think you going to just run into me and walk away." Ms. Cutright left and went to her daughter's apartment where she called her husband. She asked him to come to the apartments telling him that there is going to be "trouble because Ms. Loretta just about made me beat her to death."

Noah Dowden confirmed most of his mother's version of the events. Noah stated that Ms. Cutright told his mother, "Hit me, hit me." He testified that his mother did not slap Ms. Cutright.

Ms. Dowden filed suit against Ms. Cutright and her employer TAC Real Estate for the injuries she sustained as a result of the fight. The case was tried before a judge who determined that Ms. Cutright was 100% at fault for the accident. He awarded $20,000.00 in general damages. The trial judge made an additional award of $1,500.00 for future medical expenses for a tooth replacement.

Following judgment, the Defendants filed an appeal. In their appeal, the Defendants have asserted several assignments of error. They allege that Ms. Dowden should have some, if not all, of the fault for the fight. Regarding damages, the Defendants claim that the award for general damages was excessive, the trial judge erred in awarding future medical expenses, and the trial judge erred in failing

to offset Ms. Dowden's award of damages for lost rental and damage to the apartment.

### FAULT

The Defendants first claim that the trial judge erred in finding Ms. Cutright solely at fault in causing the fight and Ms. Dowden's injuries. They argue that the evidence establishes that Ms. Dowden was the instigator who pushed Ms. Cutright first and should be held responsible for her actions.

The trial judge concluded that Ms. Cutright used excessive force without justification, which caused Ms. Dowden's injuries. While the trial judge agreed that Ms. Dowden lightly touched Ms. Cutright, he found that it was to push Ms. Cutright away from her, who was within inches of Ms. Dowden's face. The trial judge determined that Ms. Cutright took Ms. Dowden's actions "as a license to freely and physically beat Plaintiff to the limit she desired until she grew 'tired' of doing so." It was the trial judge's observation that Ms. Cutright showed no remorse for her attack of Ms. Dowden.

"[A] trial court's allocation of fault is a finding of fact and is subject to the manifest error standard of review." *Dugas v. Derouen*, 01-1397, p. 4 (La.App. 3 Cir. 7/3/02), 824 So.2d 475, 479, *writ denied*, 02-2131 (La. 11/15/02), 829 So.2d 426.

In support of their claim that Ms. Dowden should be assessed with fault for the altercation, the Defendants cite *Landry v. Bellanger*, 02-1443 (La. 5/20/03), 851 So.2d 943. In *Landry*, the supreme court addressed the application of the "aggressor doctrine" under Louisiana's pure comparative fault regime and found the doctrine inconsistent with comparative fault principles, no longer serving as a complete bar to a plaintiff's recovery. The "aggressor doctrine" provides that a

4

plaintiff is precluded from recovering damages from an assault if his or her own actions were sufficient to provoke the physical retaliation.

The supreme court also considered the application of La.Civ.Code 2323(C) which provides that a plaintiff who suffers injury, death, or loss due to the actions of an intentional tortfeasor will not have his amount of damages reduced even if the plaintiff is partly negligent. The supreme court then held that this prohibition in La.Civ.Code art. 2323(C) does not apply when the plaintiff's conduct amounts to more than mere negligence.

The supreme court further held that self-defense is a valid defense to a battery. Explaining a claim of self-defense, the supreme court stated that "in order to succeed on a claim of self-defense (not involving deadly force), there must be an actual or reasonably apparent threat to the claimant's safety and the force employed cannot be excessive in degree or kind." *Landry*, 851 So.2d at 955 (citing David W. Robertson, *The Aggressor Doctrine*, 1 S.U. L.Rev. 82 (1975)). The supreme court further recognized that the privilege of self-defense is based on a prevention of harm to the seeker of the privilege with no desire for retaliation or revenge.

In *Landry*, the supreme court found that the plaintiff's unnecessary and unrelenting verbal provocation became a physical confrontation when the plaintiff first poked the defendant inside a bar while threatening physical violence and continued outside when the plaintiff physically and aggressively pushed the defendant. The supreme court found that the defendant was justified and acting in self-defense when she responded with only one punch considering that the plaintiff outweighed the defendant by ninety pounds and was highly intoxicated, making his

5

actions unpredictable. The defendant was found not liable for the damages caused by the brain injury suffered by the plaintiff.

Apparently, the verbal communication between the ladies was very heated. However, there is no indication in the record that there was ever any threat to Ms. Cutright. *Touchet v. Hampton*, 06-1120 (La.App. 3 Cir. 2/7/07), 950 So.2d 895. Ms. Dowden had only been home a few days after a week-long hospital stay for pneumonia. She was still weak. Prior to her hospital stay, Ms. Dowden suffered with diabetes, low blood pressure, and limited vision. Ms. Dowden's slight push to Ms. Cutright does not justify any use of responsive force, especially the continuous beating that Ms. Cutright inflicted on Ms. Dowden. The force used by Ms. Cutright was unreasonable and excessive. We agree with the trial judge that Ms. Cutright is 100% at fault for the altercation.

## GENERAL DAMAGES

The Defendants complain that the damages awarded to Ms. Dowden by the trial judge are excessive. The trial judge determined that Ms. Dowden suffered a broken rib, numerous contusions and abrasions, a broken tooth, and resulting physical pain and mental anguish for not less than one month as a result of the altercation. Additionally, the trial judge acknowledged that Ms. Dowden and her son lived in fear of Ms. Cutright for the remainder of their stay at Lakeway Apartments. For these injuries, the trial court awarded $20,000.00 in general damages.

An appellate court reviews a general damage award for an abuse of discretion. *Rachal v. Brouillette*, 12-794 (La.App. 3 Cir. 3/13/13), 111 So.3d 1137, *writ denied*, 13-690 (La. 5/3/13), 113 So.3d 217. An abuse of discretion occurs only when no reasonable trier of fact would award the amount of damages awarded

6

by the trial court. *Id.* (citing *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994)).

Ms. Dowden was still recovering from her hospital stay for pneumonia when Ms. Cutright beat her, resulting in numerous injuries including a broken rib and tooth. Noah testified that his mother suffered with pain for approximately one month following the altercation. Both Noah and his mother were afraid of Ms. Cutright while they continued living at Lakeway. Given the extent of the injuries, the recovery time, and the emotional and mental frame of mind of Ms. Dowden following the altercation, we do not find that the $20,000.00 award for general damages was an abuse of discretion.

## FUTURE MEDICAL EXPENSES

Ms. Dowden and Noah testified that one of Ms. Dowden's teeth that had been whole was now broken. The Defendants claim that the trial judge erred in awarding $1,500.00 for future medical expenses for a tooth replacement. They argue that there was no basis for the trial judge to make an award of future dental expenses because there was no evidence of the necessity of such treatment, no description of such treatment, and no evidence of the cost of such treatment.

Future medical expenses are a part of special damages which must be proven by a preponderance of the evidence. *Deligans v. Ace American Ins. Co.*, 11-1244 (La.App. 3 Cir. 3/7/12), 86 So.3d 109. The burden is on the plaintiff to establish an entitlement to future medical expenses by presenting medical evidence that indicates that it is more probable than not that future medical treatment is necessary as well as the probable costs of treatment. *Id.* Nonetheless, an award of future medical expenses is permitted when the record establishes the need for future medical treatment and there is evidence of past medical expenses in addition

7

to other evidence that allows the court to determine "a minimum amount that reasonable minds could not disagree will be required." *Stiles v. K Mart Corp.*, 597 So.2d 1012, 1013 (La.1992).

While the Defendants question whether Ms. Dowden's tooth was even broken by the altercation, we find no error in the trial court's conclusion that the tooth broke during the altercation. However, there is no medical testimony whatsoever establishing what is necessary to repair the tooth much less any evidence of the cost associated with repairing the tooth. We find that the trial court erred in making an award of $1,500.00 in future medical expenses to Ms. Dowden for repair of her tooth.

## OFFSET

The Defendants final issue with the trial judge's decision is that the trial judge erred in failing to offset Ms. Dowden's damages by the amounts she owed TAC Real Estate. They claim Ms. Dowden owes rent for three months in the amount of $99.00 in addition to the government rental assistance funds for that time period in the amount of $1,173.00. The Defendants also claim that she owed an additional $626.00 for damages and repairs after her security deposit of $424.00 was deducted from the total cost of $1,050.00.

Pursuant to La.Code Civ.P. art. 1005, offset is an affirmative defense which must be specifically pled in the defendant's answer. *Ducote v. City of Alexandria*, 95-1197 (La.App. Cir. 3/6/96), 670 So.2d 1378. A defendant who properly pleads offset as an affirmative defense has the burden of establishing its claim regarding the offset. *Id*.

The trial judge observed that the exhibits relied upon by the Defendants to establish their claim for offset, a "<u>NOTICE OF LEASE TERMINATION</u>" and a

8

"DISPOSTION OF SECURITY DEPOSIT," were both authored by Ms. Cutright. In ruling on this matter, the trial judge noted that Ms. Dowden continued tendering her rental payments to the Lakeway Apartment rent drop box but the payments were returned to her at the directive of TAC Real Estate.

Immediately after the altercation, TAC Real Estate began proceedings to evict Ms. Dowden for fighting and told Ms. Cutright not to accept any rental payments from Ms. Dowden. Based on the Defendants' refusal to accept Ms. Dowden's tendered rent payments, they were unable to collect the government assistance money. This is not due to any fault on the part of Ms. Dowden.

Furthermore, we cannot say the trial judge's findings regarding the repairs necessary to the apartment were clearly wrong. Ms. Cutright personally assessed the damages. As the person who was involved in the fight with Ms. Dowden, it is obvious that she might possess some animosity toward Ms. Dowden. No other evidence was submitted to support Ms. Cutright's claim of money spent on cleaning and repairing items in the apartment after Ms. Dowden moved out. The evidence also indicated that Ms. Dowden had to move out of the apartment the very same day she received the notice of the order of eviction. The trial judge specifically found Ms. Cutright's testimony self-serving and lacking credibility. We find no error in his ruling.

For the reasons discussed in this opinion, we reverse the judgment of the trial court which awarded $1,500.00 in future medical expenses. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to TAC Real Estate, LLC and Gina Cutright.

**REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.

9